### NORDYKE *v.* STATE OF INDIANA.

[No. 26,858. Filed November 24, 1937. Rehearing denied January 25, 1938.]

246

*Oscar B. Thiel,* and *R. W. Roley,* for appellant.

*Omer S. Jackson,* Attorney-General, and *Thomas Longfellow,* Deputy Attorney-General, for the State.

FANSLER, J.—Appellant was convicted of filing a false and fraudulent claim with the township trustee of North township, Lake county. The indictment was in three counts, the second and third of which were dismissed before the trial.

Error is assigned upon the overruling of appellant's motion to quash the indictment, and the overruling of his motion for a new trial.

The indictment charges the filing of a false and fraudulent claim against North township, consisting of a bill and account for food and supplies, pretended to have been furnished by appellant to one Edna Van Dyke, for and on behalf of the township, "which said false and fraudulent claim, bill and account is of the tenor following, to wit: . . . ." Following which there is set out in the indictment an order of the trustee's office for supplies, with a receipt signed "Edna Van Dyke," and a vendor's statement showing the amount of supplies furnished, signed "A. G. Nordyke." The indictment then alleges: "That said claim, bill and account was then and there so as aforesaid made out, presented for payment and certified as correct . . . ."

Appellant contends that the instrument set out in the indictment is not a claim such as is required by statute,

and asserts that an indictment is bad unless the false or fraudulent claim is set out or described so it can be identified, and that no claim is set out or identified. But in this contention we cannot concur. The indictment clearly charges that a false claim was filed for supplies claimed to have been furnished Edna Van Dyke. The indictment is sufficient to definitely advise the defendant of the nature and character of the charge against him. It is not necessary that the indictment contain a copy of the claim. Sections 9-1119 and 9-1126 Burns Ann. St. 1933, sections 2202, 2205 Baldwin's 1934; *Wilson* v. *State* (1901), 156 Ind. 631, 60 N. E. 1086; *State* v. *Cameron* (1911), 176 Ind. 385, 96 N. E. 150; *Foust et al.* v. *State* (1928), 200 Ind. 76, 161 N. E. 371.

Appellant questions the sufficiency of the evidence. There is evidence that an employee of the township trustee sold certain poor relief orders, including the one described in the indictment, to appellant, filled out in all respects, except the vendor's statement and the customer's receipt; that afterwards this order, with a signature purporting to be that of the customer signed to the receipt, and the signature of appellant signed to the vendor's statement, was discovered in a basket in the trustee's office in which claims filed with the trustee were kept, and that it had been detached and removed from some claim filed with the trustee. There was evidence that appellant never filed any claims with the trustee, but that all of his poor relief purchase orders were assigned to a wholesale grocery house which filed claims for the orders with the trustee. Two handwriting experts testified that the signature "A. G. Nordyke" on the vendor's statement was in their opinion in the same handwriting as the signature "Adin G. Nordyke" signed to appellant's recognizance bond. Appellant did not testify as a witness.

The employee, who testified that he sold the orders to appellant, testified that he took certain blank books of orders from the office of the trustee. There was evidence that these blank books were missing from the files, and the order, which is the basis of the prosecution, corresponded as to serial number with the series contained in the missing book. The facts were sufficient to justify the jury in concluding that appellant purchased the fictitious order from the agent of the trustee, signed the same, and delivered it to his wholesale grocer, who filed a claim based upon it.

In *Brunaugh* v. *State* (1910), 173 Ind. 483, 507, 90 N. E. 1019, 1029, a prosecution for filing a false claim against a city, it is said: "Again, on the charge as presented by the indictment, the State had the legal right to establish by competent evidence that appellant had committed the crime through the medium of an innocent agent, although at the time the false claim was presented to the board of public works for allowance he was not personally present." Many authorities are cited sustaining the position. It was not necessary that appellant prepare the actual claim, or that he file it. It is sufficient if the thing was accomplished by his will and procurement, even though it was consummated through an innocent agency. Only two expert witnesses testified concerning the signature of appellant. It is contended that section 9-1606 Burns Ann. St. 1933, §2262 Baldwin's 1934, applies, and that, where persons of skill are called to testify concerning a signature, three witnesses at least shall be required. In *Jones* v. *State* (1877), 60 Ind. 241, this section was held to apply only to cases where a note, bill, draft, or certificate of deposit is the subject of crime. Here the genuineness of the signature of appellant was not the question at issue. It was merely an incident, a circumstance. Section 2-1723 Burns Ann. St. 1933, §247 Bald-

win's 1934, provides: "Where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court or officer conducting such proceeding, to prove or disprove such genuineness." The witnesses here are referred to as experts. They were employees of a bank, who had experince in examining signatures. What they did was compare the signature in question with the signature of appellant upon his recognizance bond and give their opinion.

It is contended that there is no evidence that any claim, based upon the order in question, was filed by any one. But there is evidence that appellant bought the order, and paid for it; that it was one of a series of orders which had been stolen from the trustee's office; that appellant turned over all of his orders to his wholesaler; that the order was found in the basket in which claims that had been filed were kept in the trustee's office, and that it had been detached from a claim; and these facts are not disputed except by the evidence of appellant's wife and others that, when the employee of the trustee was in appellant's home and store, he did not discuss the sale of orders. Since it is not disputed that the order blank in question was stolen and was spurious, the jury obviously believed that appellant had purchased it knowing it was spurious. Since the other facts are not disputed, they lead to the inevitable conclusion that the order could only have reached the basket in the trustee's office by delivery to appellant's wholesaler, who attached it to a claim. Direct evidence is not necessary. Appellant says: "The facts disclosed by the evidence might support the offense obtaining of goods by false and fraudulent pretenses from a wholesale house in

Chicago." If the facts are sufficient to establish that fact, surely there is sufficient circumstantial evidence to convince that the order was made a basis of a claim by the wholesale house, and filed with the trustee. Again, appellant says: "Under the most favorable construction of the evidence from appellee's position, the most that can be said of appellant is that he transferred or assigned his order to Holleb & Company; then Holleb & Company were not appellant's agents, or acting under his direction." But Holleb & Company was the agency through which appellant acted. He could not realize upon the spurious orders without filing a claim, or causing some one else to file it. He knew, when he transferred the claim to his wholesaler for credit, that the wholesaler, innocent of knowledge of the fraud, would make it the basis of a claim against the township.

The recognizance bond, bearing appellant's signature, was admitted in evidence, as a basis of comparison, over appellant's objection. This is assigned as error. An attaché of the sheriff's office testified that the recognizance bond was brought to him by the defendant; that he asked the defendant if that was his signature, and that he said it was; that he had never seen the defendant before or since. When asked to identify the defendant, he pointed to the defendant's brother. Appellant's father testified that it seemed to be his son's handwriting, but that he could not be sure. There was therefore evidence that the signature on the recognizance bond was that of appellant, and no evidence that it was not. It was one of the papers on file in the case. The fact that it was subscribed to appellant's recognizance bond was entitled to at least some consideration. It was not error to admit the instrument.

The defendant caused his name to be written by five different persons, and asked the witnesses, who had

given their opinion as to appellant's handwriting, to compare the five signatures with the ones in evidence, and express an opinion as to whether any of the signatures submitted by appellant were the same. An objection was sustained. This was not error. Appellant relies upon *Hoag* v. *Wright et al.* (1903), 174 N. Y. Ct. App. 36, 66 N. E. 579, which overruled a former New York case, and held that spurious signatures might be used in cross-examination. But the weight of authority is to the contrary. The authorities are collected, and the reasons for the rule excluding spurious signatures are discussed at length, in *Fourth National Bank of Fayetville* v. *McArthur et al.* (1915), 168 N. C. 48, 84 S. E. 39. The statute above referred to provides that admitted or proved handwriting shall be competent evidence as a basis of comparison. In *McDonald et al.* v. *McDonald et al.* (1895), 142 Ind. 55, 69, 71, 41 N. E. 336, 341, it is said that: "The rule is firmly settled in this State that on a question involving handwriting, the only papers that may be used in examinations, of even an expert witness, are those which may have been brought into the case for another purpose. Other papers not pertinent to the case cannot be shown to the witness and used upon examination, unless the genuineness of the same is admitted by the party against whom the evidence is sought to be elicited." Upon cross-examination, checks and other instruments had been submitted to a witness for the purpose of testing his credibility and his expertness. The court said: "If this could be held admissible, then it must be evident that the rule referred to, forbidding papers not admitted to be genuine to be used as a standard of comparison, would be abrogated, and the evil which it was intended to prevent would necessarily follow. For if the witness had stated that the signatures to the checks and note were not genuine, then if appellants were entitled to use

them for the purpose as insisted, surely they would have been entitled to contradict him by other evidence. And likewise if he stated they were true signatures, to the appellees must be conceded the right to show the contrary, and hence at once the collateral inquiry would have arisen. There was no error in excluding this question." The same result is reached by the rule that if a cross-examiner goes into collateral matters, he is bound by the answer of the witness. Hence, if appellant had been permitted to ask the witness concerning the signatures which he had prepared, he would have been bound by the answers. The spurious signatures were clearly not admissible, and it was not error to refuse to permit appellant to question the witnesses concerning them.

Numerous spurious orders, similar to the one described in the indictment, were admitted in evidence over appellant's objection. There was testimony that they had been sold to appellant by the same person who sold him the one which is the basis of the indictment, as a part of the same or a similar transaction. They were competent for the purpose of characterizing the conduct of appellant, and proving criminal intent. *Lund* v. *State* (1934), 207 Ind. 347, 190 N. E. 850.

The court instructed the jury concerning the duties of the trustee in issuing relief orders and the allowance of claims based thereon. Appellant contends that the instruction was inapplicable to the issues, and therefore erroneous. But no impropriety can be seen in advising the jury as to the manner provided by law for the transaction of the business of the trustee, and it could not have prejudiced appellant's rights. The court undertook, by instruction No. 1, to advise the jury concerning the issues. The instruction recites that the "indictment . . . reads as follows," after which the first

count of the indictment is set out. No reference is made to the remaining two counts, which were dismissed before trial, nor is any reference made in the instructions to the dismissal of the second and third counts. The indictment was delivered to the jury under an appropriate instruction, and, presumably, taken to the jury room. Appellant tendered an instruction, setting out the first count of the indictment, and advising the jury that the second and third counts had been dismissed and were not to be considered. This instruction was refused for some reason which is not disclosed. Appellant was entitled to have the jury advised that the second and third counts had been dismissed. It seems highly improbable that the jury could have escaped knowledge of the fact during the trial, but we must assume, from the record, that the jury was not advised. Since this is error, the question arises, was appellant prejudiced by the omission? Appellant says that, since the jury had before it the entire indictment, and, since evidence was introduced which tended to sustain each count thereof, the court did not properly confine the jury to the issue on trial; that it is conceivable that some jurors might have thought appellant guilty of the offense alleged in the second count and not guilty under counts one and three, and others may have considered him guilty of the offense alleged in counts one and three and not guilty under count two. But the jury returned a general verdict of guilty as charged, which is a verdict of guilty as to each and all counts of the indictment, which means that all of the jurors agreed as to defendant's guilt under all of the counts before them. *Lovell* v. *State* (1874), 45 Ind. 550; *Underhill* v. *State* (1921), 190 Ind. 558, 130 N. E. 225. Appellant was not harmed.

A long instruction was given upon circumstantial evidence, in which the court advised the jury correctly as

to the law upon the subject. In the instruction it is said that, when circumstantial evidence is the best evidence which the nature of the case permits, the reasoning which the jury is to apply in determining its sufficiency "is not fettered by artificial and arbitrary rules, but is that reasoning which is usual in all matters in which solemn judgments of prudent men are reached in the transaction of matters outside of the court." Appellant earnestly contends that he was prejudiced by this instruction, since his guilt must be established beyond a reasonable doubt. But the court instructed the jury fully upon the question of reasonable doubt, and that, "before the jury can find the defendant guilty as charged, the evidence in the case must be such as to produce in the mind of each juror a conviction of guilty, such as you would be willing to act upon in any matter of the highest concern and importance to your own dearest interests and in such circumstances as where you would be free to act or not, as you might choose." The instruction criticized deals with the manner of weighing and considering evidence, and not with the amount or weight of evidence that is necessary, and the jury must have so understood it.

Appellant tendered an instruction to the effect that, unless a felonious intent is shown, there can be no conviction. The instruction was refused. It is contended that this was erroneous and prejudicial because the jury was not instructed on the question of intent. The State points to the court's instructions Nos. 1, 2, and 3, and contends that they sufficiently cover the subject. Instruction No. 1 merely sets out the first count of the indictment, which alleges that the defendant filed the claim, "then and there knowing the same to be false and fraudulent," and that the defendant "did then and there unlawfully, feloniously, know-

ingly and designedly and with the unlawful, felonious and fraudulent intent to cheat . . . ." The second instruction quotes the statute under which the indictment is drawn. The third instruction informs the jury that, before there can be a conviction, the state must prove each and every material allegation of the indictment beyond a reasonable doubt. Instruction No. 15 deals with other acts of the defendant, advising the jury that the evidence of other transactions is not to be considered, unless they first find from the evidence that the defendant made out and presented for payment, as correct, the claim or account which is the basis of the indictment, and that if they so determine "then only are you permitted to consider the evidence with reference to other similar acts and transactions, if any, and then only for the purpose of determining the guilty knowledge, intent, motive or purpose of the defendant and to determine whether or not the acts charged in this case were committed by the defendant, if they were committed, with the knowledge on his part at the time that they were false and fraudulent."

It would seem that, from these instructions, the jury must have understood that intent to defraud was an essential element of the offense charged. This is all that is required, and the defendant may not insist upon or require the use of any particular form or words. There is no instruction which, by any stretch of the imagination, might be considered as indicating, or tending to lead to the understanding, that intent is not a necessary element of the crime. Appellant's complaint is not that the jury was incorrectly instructed upon the question of intent, but that there was a failure to instruct at all. It cannot reasonably be concluded that the jury was left in ignorance on the subject. The jury must have understood that the defendant could only be

convicted upon proof that he knowingly and intentionally did the thing charged.

Appellant complains also of the refusal to give an instruction tendered, which set out the provisions of the statute concerning the preparation and filing of ▬ claims for poor relief. But it is not necessary to a conviction that the claim should be regular in form. The purpose to defraud is the gravamen of the charge. Complaint is also made of the refusal to give an instruction to the effect that intent to file a claim does not constitute the offense charged. But, since the court instructed the jury as to what did constitute the offense, it was unnecessary to instruct it as to what did not constitute the offense. Appellant complains of the refusal to give an instruction which contained the statement: "The theory of the law being that one who is guilty of a felony is not as readily to be believed as another witness." The instruction was erroneous. The law has no theories concerning the credibility of witnesses, except that their credibility is to be determined by the jury. The jury was fully instructed that, in determining the credit to be given to the testimony of witnesses, it has a right to take into consideration their conduct, interest, and motive in testifying, relationship to the parties, etc., the usual correct instruction. It was also instructed that the testimony of an accomplice should be weighed in the same manner as the testimony of other witnesses. The instruction contained the statement that the testimony of an accomplice "should be cautiously received and carefully scrutinized by the jury." If appellant was entitled to have suspicion cast upon the testimony of the witness in question, the statement quoted protected his right.

Judgment affirmed.