SNIDER, EXECUTOR *v.* PREACHERS AID SOCIETY.

[No. 16,845. Filed May 8, 1942.]

*Alexander M. Campbell* and *James P. Murphy,* both of Fort Wayne, for appellant.

*Howard W. Mountz,* of Garrett, and *Lester Blaine Harper,* of Fort Wayne, for appellee.

CURTIS, J.—The appellee on May 13, 1941, filed a claim against the estate of Jennie Duguid, deceased, based upon a Permanent Fund Bond alleged to have been executed by said decedent and her husband on July 30, 1918, payable to the appellee in the sum of $5,000.00. The bond was signed by E. C. Duguid and Mrs. E. C. Duguid, and attested by one Kemper; E. C. Duguid died April 1, 1939, and his wife, Jennie Duguid, died on April 2, 1940.

The executor of the estate of Jennie Duguid disallowed the claim, and the same was transferred to the issue docket for trial where it was tried before the court without the intervention of a jury. The claim was answered by the executor in five paragraphs. We now quote said paragraphs of answer as found in the appellant's brief, as follows:

"PARAGRAPH ONE. Comes now the Defendant Ora O. Snider, executor of the estate of Jennie Duguid, deceased, and says that he has no information regarding the claim of the plaintiff, filed herein.

"PARAGRAPH TWO. For second paragraph of answer the defendant says that there was no valuable consideration or no good consideration given for the instrument referred to as plaintiff's Exhibit No. A, upon which the plaintiff relies for recovery in its complaint, and that said instrument is without consideration.

"PARAGRAPH THREE. For third paragraph of answer the defendant says that Exhibit A in plaintiff's complaint provides 'said sum to be paid . . . on or before our deaths the death of the survivor of either of us' and that said sum having not

been paid on or before the death of the decedent herein the defendant says that said instrument has terminated, the condition of payment being on or before death.

"PARAGRAPH FOUR. By way of fourth paragraph of answer non est factum the defendant says that the signature of 'Mrs. E. C. Duguid' is not the signature of the defendant's decedent herein and that the said decedent, Jennie Duguid, did not sign Exhibit A in the plaintiff's claim.

"PARAGRAPH FIVE. By way of fifth paragraph of answer the defendant says that the plaintiff's cause of action is barred by Section 2-2602 of Burns Indiana Annotated Statutes 1933."

The appellee replied to each of said paragraphs by a general denial. Upon the issues thus made, the cause was tried, resulting in a finding and judgment thereon in favor of the appellee and against the said estate in the sum of $5,000.00, together with the costs of the action.

In due time, the appellant filed a motion for new trial which was overruled. The causes or grounds of said motion, which are presented by the appellant in the appellant's brief under Propositions and Authorities, are, first that the decision of the court is not sustained by sufficient evidence and is contrary to law, and alleged error of the court in certain specified rulings as to the evidence.

In addition to the other evidence, the parties stipulated as follows:

"STIPULATION. It is admitted by the parties to this cause that the signature Jennie Duguid, which is marked plaintiff's Exhibit 1 and being the signature of Jennie Duguid to the Last Will and Testament of Jennie Duguid, and is the genuine signature of the decedent, Jennie Duguid.

"STIPULATION. It is generally stipulated between the parties that Jennie Duguid is the wife

of E. C. Duguid and is one and the same person as Mrs. E. C. Duguid."

We now set out a copy of the bond sued upon:

"PERMANENT FUND BOND. IN CONSIDERATION That the Board of Control of the Preachers Aid Society of the North Indiana Conference of the Methodist Episcopal Church shall undertake to increase and maintain the Permanent Fund of said Society, and bestow their labors in that behalf, the undersigned does hereby bind himself, his heirs, devisees and representatives to pay said Board of Control of THE PREACHERS AID SOCIETY at Muncie, Delaware County, Indiana, or to any duly authorized agent of said Society the sum of Five Thousand Dollars, said sum to be paid without relief from valuation or appraisement laws on or before our deaths, the death of the survivor of either of us.

"By the acceptance of this undertaking said Board of Control bind themselves to forever retain the entire principal of said sum invested in the Permanent Fund of said Society, and to employ the interest and income arising therefrom in the support of the conference claimants of said Society.

"THIS IS TO BE KNOWN AS THE DUGUID MEMORIAL FUND.

                  "(SIGNED) E. C. DUGUID

                      "MRS. E. C. DUGUID

"ATTEST: Rev. L. W. KEMPER"

The real and controlling question in controversy in the instant case, in the trial court, was the question as to whether or not the signature of the said decedent to said bond is her genuine signature.

Under Proposition I, the appellant in his brief contends that the decision of the court is not sustained by sufficient evidence and is contrary to law. In support of this proposition, the appellant asserts that in a case involving the genuineness of a signature the reviewing court will, if the papers used

by the witnesses in making comparisons are in the record, inspect and compare them and draw its own conclusion, and that it will not be bound by the familiar rule that an appellate tribunal will not weigh the evidence. The appellant cites no authority in Indiana, and we know of none, that would sustain the above proposition. It is our opinion that the same rules apply in the instant case as apply in other civil actions, and that, where there is competent evidence to sustain the trial court in its conclusion, this court will not weigh the evidence and substitute its judgment for the judgment of the trial court unless the evidence is of such a conclusive character as to force a conclusion contrary to that reached by the trial court. There was an abundance of evidence, as we view it, upon which the trial court could reach the conclusion that the signature of the appellant's decedent to the bond in question was the genuine signature of the said decedent. The statute bearing upon this question is § 2-1723, Burns' 1933, as follows:

"**Handwriting — Proof — Comparison.** — In any proceeding before a court or judicial officer of the state of Indiana where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court or officer conducting such proceeding, to prove or disprove such genuineness."

It is the further contention, however, of the appellant that some of the evidence admitted by the trial court was improperly admitted, and that if this alleged improper evidence is not considered, that then there would be lacking competent evidence to sustain the decision of the trial court. The appellant, however, overlooks the fact that it was agreed by the

parties that the signature of the said decedent on one of the exhibits, to wit, the will of the said decedent, was her genuine signature. The will was introduced in evidence without objection. The court, therefore, had before it as competent evidence her signature on her will as a standard of comparison with her signature on the bond sued upon. Other items of evidence were admitted by the trial court in the nature of exhibits, such as a real estate mortgage and a real estate contract signed by the said decedent which were recognized and acquiesced in by the decedent. These were properly identified and established. See *Plymouth Savings, etc., Assn.* v. *Kassing, Admr.* (1919), 72 Ind. App. 1, 21, 125 N. E. 488, from which we quote as follows:

> "We believe the true rule deduced from the authorities to be that the genuineness of a 'standard' writing may be established (1) by the admission of the person sought to be charged with the disputed writing made at or for the purpose of the trial or by his testimony; (2) by witnesses who saw the standards written or to whom or in whose hearing the person sought to be charged acknowledged the writing thereof; (3) by evidence showing that the reputed writer of the standard has acquiesced in or recognized the same, or that it has been adopted and acted upon by him in his business transactions or other concerns."

Other items of evidence were admitted showing the decedent's signature to other papers and documents. Some of these papers and documents were used as the basis for the opinion expressed by some of the witnesses for the appellant to the effect that the signature on the bond in question was not the genuine signature of the said decedent. The court had these various standards for comparison before it and, upon the evidence as a whole, decided that the signature on the bond sued upon was the genuine signature of

the said decedent. But the appellant further asserts that some of these exhibits which were used as standards were improperly admitted out of the usual order by the trial court, and that some of them were admitted in rebuttal. It must be remembered, however, that in the evidence introduced by the appellant, several witnesses testified that the signature of the decedent on the bond was not her genuine signature. In rebuttal, the appellee was permitted to have these other exhibits introduced into evidence. We think such procedure is recognized by the clear weight of authority in this State. We now quote from *Wines* v. *State Bank of Hamilton* (1899), 22 Ind. App. 114, 119, 53 N. E. 389, as follows:

"Objection was made on behalf of the appellants to a question propounded to a witness for the appellee testifying on rebuttal as an expert in handwriting; the question calling for a comparison of the signatures on the note with other signatures of the same persons, and the ground of the objection being that the evidence sought was a part of the plaintiff's case in chief, and not proper evidence in rebuttal. The court overruled the objection, and the witness in his answer gave his opinion that the signatures were made by the same persons. The execution of the note having been denied under oath by all the appellants, the burden of proving its execution was upon the appellee throughout the trial. Section 367 Burns 1894, section 364 Horner 1897; *Carver* v. *Carver*, 97 Ind. 497. The necessity was upon the appellee of going forward with evidence to establish a *prima facie* case. When it had done so it devolved upon the appellants to meet the *prima facie* case with counter-evidence. The appellee could not recover without a preponderance of the evidence. If the counter-evidence of the appellants tended to destroy the *prima facie* case of the appellee, and the appellee could produce further evidence adapted by its character to counteract the tendency of the counter-evidence of the appellants, by directly replying thereto, and the appellee

could thereby strengthen the *prima facie* case and increase the weight of evidence in favor of the appellee, such evidence was admissible in rebuttal.

"The object of the judicial investigation is a just result, and, necessarily, the trial court has a very broad discretion as to the order of the introduction of evidence. When the case comes to us, the question whether the evidence upon which the cause was submitted to the jury was introduced in orderly sequence is not so important as the question whether it was competent for the purpose of leading the jury to a just conclusion upon the issue on trial. To warrant a reversal for the admission of evidence out of its proper order, even for the admission in rebuttal of evidence which should have been offered in the original case of the party offering it, there should appear to have been an abuse of the discretion of the trial court tending to defeat the ends of justice. *Stewart* v. *Smith*, 111 Ind. 526; *Noblesville, etc., Co.* v. *Teter*, 1 Ind. App. 322; *Baldwin* v. *Threlkeld*, 8 Ind. App. 312, 321-2.

"The appellee in making out its original case had proved by a witness, who was acting as the agent of the payee in procuring the note, that he had seen each one of the appellants sign the note, and that they in succession as they signed it delivered it to him, and there was evidence that after it had been signed by all the parties it was delivered by said agent to the payee. On behalf of some of the appellants there was evidence tending to prove that some of the signatures were not in the handwriting of the persons whose signatures they purported to be. If it be true that the appellee might properly have produced the expert testimony of handwriting in its case in chief, there was no abuse of discretion in admitting it. The expert testimony was not necessarily a part of the appellee's original case. It could establish a *prima facie* case without it. Though it tended to corroborate evidence by which the *prima facie* case was in part made out and to establish certain facts testified to on the appellee's original case, yet, we think it tended to rebut the evidence for the appellants upon a particular point, and under the circumstances would seem to have been competent in rebuttal.

But if it could not properly be said to be strictly rebuttal evidence, there was no abuse of discretion in its admission. *Bedford, etc., R. Co.* v. *Rainbolt,* 99 Ind. 551, 562; *Baldwin* v. *Threlkeld, supra.*"

The above case has been followed and approved in this State in the case of *Fudge* v. *Marquell* (1905), 164 Ind. 447, 72 N. E. 565, 73 N. E. 895; *Alexander* v. *Blackburn* (1912), 178 Ind. 66, 98 N. E. 711; *Godman* v. *Henby* (1905), 37 Ind. App. 1, 76 N. E. 423.

One of the main contentions of the appellant is that the trial court permitted the introduction of several items of evidence out of the regular order for the production of testimony, and, therefore, committed reversible error. We cannot agree with this contention. The order as to the introduction of items of evidence is so far within the discretion of the trial court that in order to warrant a reversal for the admission of evidence out of its proper order even in the admission in rebuttal of evidence which should have been offered in the original case of the party offering it, that there would have to be such an abuse of discretion of the trial court as would tend to defeat the ends of justice. No such showing has been made in the instant case.

The appellant also predicates error upon the action of the trial court in permitting the witnesses, Freeland Hall and one Schroyer, to testify, they being the secretary and treasurer respectively of the appellee corporation. The trial court did refuse to permit either of them to testify as to matters occurring previously to the death of the decedent. Hall was allowed to testify as to the possession of the bond after the decedent's death, and Schroyer was permitted to testify as to the fact that the appellee society maintained a permanent fund for the benefit of those who

were interested therein. We find no reversible error in these rulings as to the evidence.

Finding no reversible error, the judgment is affirmed.

NOTE.—Reported in 41 N. E. (2d) 665.