SPENCER *v.* STATE OF INDIANA.

[No. 29,565. Filed February 5, 1958.]

*Emmanuel Baugh* and *John G. Bunner,* of counsel, both of Evansville, for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling* and *Stanley B. Miller,* Deputy Attorneys General, for appellee.

ARTERBURN, J.—This is an appeal by John Spencer, appellant, from a conviction of forgery in the Vanderburgh Circuit Court. Appellant, by way of motion for a new trial, assigns a number of errors, only a part of which are relied upon in his brief. The first of these discussed is that during the trial, members of the police department, prosecuting staff, investigators, and the public generally mingled with the jury and passed through the room where the jury was waiting during recesses and intermission periods and that it was possible for the jurors to overhear statements and comments of spectators and interested persons concerning the trial. The appellant presented verified statements to support his contention. There is no showing, however, that the appellant made any objections to the existing condition during the trial, although the condition was as apparent to the appellant and his counsel as to any other person.

We do not approve of the practice of permitting the jury to mingle freely with the spectators and those participating in the trial during the trial, under the conditions stated. However, it is incumbent upon the appellant to make prompt objections to such practice and to request that remedial measures be taken by the court. The appellant may not wait until the outcome of the case is known before making an objection. An examination of the record shows that the appellant made a motion during the examination of the jury on *voir dire* "to require all prospective jurors already seated in the jury box or already questioned to be required to be kept in the room by themselves," but never renewed the motion as to the jury finally chosen to try the case. We therefore have no erroneous ruling properly presented to us on

this appeal upon the practice attempted to be questioned.

*Woods* v. *State* (1954), 233 Ind. 320, 119 N. E. 2d 558 is not in point, since in that case during the trial, promptly, the defendant objected to the visiting between witnesses and the jury at intermission time. *Blanton* v. *State* (1954), 233 Ind. 51, 115 N. E. 2d 122, 116 N. E. 2d 631; *Miller, Jr.* v. *State* (1953), 232 Ind. 578, 115 N. E. 2d 120.

The remaining points urged by the appellant relate to the exclusion of certain evidence offered by the appellant. The appellant, defendant below, offered as an exhibit in evidence a photostatic copy of the check on which the state predicated its charge of forgery and also a photostatic enlargement of the same check. These exhibits were properly identified. They were offered for the purpose of affording a basis of comparison of the handwriting of the appellant by way of the enlargement. The state objected to these reproductions and photostatic copies and the court sustained the objection and excluded this evidence.

The same exhibits were again offered in cross-examination of the state's handwriting expert, Edwin C. Schroeder, and were again excluded. This was prejudicial error. It is well-settled that enlarged photographs or copies, properly identified, may be introduced in evidence where the issue is one of questioned documents or handwriting. This is particularly true for the purpose of cross-examination, although not limited thereto. Magnifying glasses, microscopes and other instruments, it goes without saying, may be used for the purpose of better detection, observation and information of witnesses and the jury. Underhill's Criminal Evidence, 5th Edition (Herrick), Vol. 1, §117, p. 223; *Alexander* v. *Blackburn* (1912),

178 Ind. 66, 98 N. E. 711; 3 Wigmore on Evidence, 3rd Edition, p. 178; 23 C. J. S. Criminal Law, §852, p. 51; *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79; *McDonald* v. *State* (1954), 233 Ind. 441, 118 N. E. 2d 891.

Appellant further states that he offered the testimony of witness LaMar, who stated that he knew the appellant's handwriting and was acquainted with it and that he had seen the appellant write "whole pages of orders." The state objected to the question asked this witness if he thought the handwriting on the check in question was the handwriting of the appellant. The ground of objection was that the witness was not an expert. The court erred in sustaining this objection to the prejudice of the appellant. One need not be an expert to give his opinion as to the genuineness of the handwriting of a person if he is familiar with such person's handwriting and has seen the person write.

Anyone who is familiar with a person's writing from experience, having seen him write, or having carried on correspondence with him or from the opportunities of having frequently handled and observed the person's handwriting, is competent as a non-expert to give an opinion as to the genuineness of his signature or handwriting.

> "So often does the subject of expert qualifications in handwriting come before the Courts that this subject is ordinarily thought of as exclusively one for experts. But a little reflection on every day's practice will demonstrate this error of thought. Where the witness is sufficiently qualified as to knowledge, *i.e.* where he has *seen the person* write or the like . . . ., no dispute is ever raised as to his experiential competency. Proper familiarity with the standard of comparison is all that is asked for, and no special skill in judging of writings is

required. It is accepted law that the general experience of the ordinary person is sufficient, so far as experiential competency goes." Wigmore on Evidence, 3rd Edition, Vol. II, §570, p. 668; *Thomas* v. *The State* (1885), 103 Ind. 419, 2 N. E. 808; Underhill's Criminal Evidence, 5th Edition (Herrick), Vol. 2, §318, p. 805; *Snider Executor* v. *Preachers Aid Society* (1942), 111 Ind. App. 410, 41 N. E. 2d 665.

A further ground for reversal urged by the appellant is that the trial court refused to permit two witnesses (Southwell and Sawyer) presented by appellant, ▇ to give their opinion with reference to the genuineness of the signature in question. The record shows that these two witnesses were employed in banks, that they were the persons to whom questioned signatures were referred by the banks and that they made the comparisons with signature cards in the banks. The evidence showed they made the final decisions for the financial institutions and that they were experienced in that particular field. Bank employees experienced in examining signatures fall within the classification of experts in that field and are competent witnesses in this state. *Nordyke* v. *State* (1937), 213 *Ind.* 243, 11 N. E. 2d 165; *City of Ft. Wayne* v. *Coombs et al.* (1886), 107 Ind. 75, 7 N. E. 743, 57 Am. Rep. 82.

The extent of a witness's knowledge does not necessarily determine his competency. It merely goes to the weight of his testimony and is a matter for the ▇ consideration of the jury. *The City of Terre Haute* v. *Hudnut et al.* (1887), 112 Ind. 542, 13 N. E. 686; Underhill's Criminal Evidence, 5th Edition (Herrick), Vol. 2, §11, p. 783.

Appellant also urges that he was refused the opportunity of introducing prepared signatures and handwriting which he had written after the charge was

filed against him. The contention was that he desired to use them for the purpose of cross-examination and comparison with other handwriting involved in the trial claimed to be genuine. Objections were made to the samples of the appellant's handwriting sought to be introduced by the appellant on the ground that it was self-serving and was not made at a time prior to the charge being filed against the appellant.

The court committed no error in that connection for the reason that such writings or any acts or statements, when made after knowledge of the charge by a defendant, are self-serving in nature. They may be drawn out on cross-examination of the defendant but not offered on behalf of the defendant, any more than a self-serving statement may be offered by the defendant in his own behalf. *Hickory* v. *United States* (1893), 151 U. S. 303, 14 S. Ct. 334, 38 L. Ed. 170.

"§697. *Writing 'post litem motam'; After-acquired Knowledge.* It is obvious that one who denies the genuineness of a writing which an opponent affirms, or 'visa versa,' will be tempted to form his writing to suit his claim if he writes *after controversy* for the purpose of showing the type of his writing. It is true that one cannot vary his handwriting entirely at his pleasure; but it is safe, as a rule, to accept no testimony founded on such specimens; though the matter should be left to the trial Court's discretion.

"But no such objection attaches to specimens thus written at the *opponent's request,* for here the opponent in effect takes the risk of the hand being feigned, and waives the objection." Wigmore on Evidence, 3rd Edition, Vol. III, §697, p. 24.

There are other errors suggested by the appellant, but in view of what we have said, we feel it unnecessary to discuss these points, since it is not likely that the questions will arise again upon a retrial.

The judgment of the trial court is reversed with directions to sustain the motion for a new trial.

Emmert, C. J., Bobbitt, Landis and Achor, JJ., concur.

NOTE.—Reported in 147 N. E. 2d 581.