MICHAEL JAMES LINEBACK *v*. STATE OF INDIANA.

[No. 1072S148. Filed June 7, 1973. Rehearing denied October 4, 1973.]

504

John C. Bunner, of Evansville, for appellant.

Theodore L. Sendak, Attorney General, Lynda F. Huppert, Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by affidavit with the commission of the crime of robbery and physical injury by a deadly weapon while engaged in a robbery. Upon a plea of not guilty, trial by jury was had. At the close of the trial the State dismissed the robbery charge, and the jury returned a verdict of guilty on the charge of inflicting a physical injury while engaged in a robbery. The appellant was sentenced to life imprisonment.

The record shows the following facts:

On August 3, 1971, at about midnight, the Zesto Drive-In Restaurant located in Evansville, Indiana, was being operated by Stephen Hardesty, the son of George Hardesty, the owner of the restaurant. A man later identified as the appellant entered the restaurant with a gun and threatened to shoot Stephen Hardesty if he did not give him the money.

As the appellant ran from the restaurant, the owner, George Hardesty, became aware of the robbery and chased the appellant to his automobile where in an altercation between

Hardesty and the appellant, Hardesty regained the sack of money carried from the restaurant by the appellant, and the appellant shot and wounded Hardesty.

While the robbery was in progress, one Jesse Merriweather was driving past the restaurant with his wife, Dora, and two friends, Martha Shelby and Wanda Lewis. These persons observed the altercation which resulted in Mr. Hardesty's being shot. Mr. Merriweather attempted to come to the aid of Mr. Hardesty. As the appellant fled the scene, Mr. Merriweather attempted to follow him in his car but was unable to keep up with him. The Merriweathers and their friends then returned to the Zesto Drive-In and were there when police returned with the appellant. At that time Martha Shelby, Wanda Lewis and Dora Merriweather each identified the appellant by his clothing as the person who had fired the shot injuring Mr. Hardesty.

At the trial Martha Shelby testified on behalf of the State and identified a line-up picture in which the appellant appeared as the same line-up in which she identified appellant. When asked on cross-examination if the appellant, who was then seated in the court room, was positively the same man she had previously identified, she stated he resembled the person she had previously identified, but that he had changed a lot; that he was fatter, and that his hair was different.

Both Mr. and Mrs. Merriweather and Wanda Lewis testified on behalf of the appellant and stated that the person on trial could not now be identified by them as the person who had shot Hardesty.

Both Hardesty and his son testified that the appellant was the man who committed the robbery and the shooting.

The appellant first claims the trial court erred in not declaring a mistrial, when during the cross-examination of Jesse Merriweather, the Prosecuting Attorney stated, "Your Honor, I think this individual should be apprised of his constitutional rights on self-incrimination concerning possible perjury charges." Upon objection of the appellant, the court

immediately admonished the jury to disregard the statement of the Prosecutor. He further instructed the jury that it was their responsibility as jurors to determine the credibility of the witnesses, and that the court would not instruct any witness with reference to his testimony. Further during cross-examination, the Prosecuting Attorney asked Mr. Merriweather if on a previous occasion he had stated under oath that he was afraid to testify, to which Merriweather answered, "No."

At that time the appellant moved for mistrial because of the conduct of the Prosecuting Attorney. The Court overruled the motion for mistrial, but sustained the objection of the appellant to that line of questioning by the Prosecutor.

Upon summation of the case before the jury, the Prosecutor expressed an opinion that Merriweather was afraid to identify the appellant. Upon objection by the appellant, the court immediately sustained the objection and ordered the jury to disregard the statements of the Prosecuting Attorney. Appellant urges this entire conduct on the part of the Prosecutor as error which would entitle him to a mistrial.

With this we cannot agree. The appellant throughout the course of the trial had ample opportunity for full cross-examination of both Mr. Hardesty and his son, who strongly maintained their identification of the appellant. The appellant had the same opportunity with regard to the testimony of Martha Shelby whose testimony, when taken in its entirety, was quite sufficient for the jury to conclude that the appellant was the person she had previously identified as the attacker of Hardesty.

In the cross-examination of both Dora Merriweather and Wanda Lewis, the State was able to establish that they had previously made identification of the appellant by his clothing only. However, each of these witnesses was quite reluctant to state that the appellant as he appeared in the court room on the day of trial was the same person they had previously identified. It was brought out that nine months had elapsed

since the date of the alleged crime, and that there had been a marked change in the appellant's appearance during that period, largely due to a change in his hair style.

We cannot say that the appellant was deprived of a fair trial. All of these matters were presented to the jury for their weight and evaluation. The fact that the Prosecuting Attorney at times became somewhat overzealous, requiring the trial judge to admonish the jury to disregard the Prosecutor's statements, is not of such magnitude in this case as to require a reversal. As this Court has observed on previous occasions, we cannot expect trials to be perfect. In the heat of trial improper statements will from time to time occur. When such situations are handled promptly by the trial court with proper admonition to the jury, it will be presumed that the error has been cured, unless the contrary is made to appear. *Maynard* v. *State* (1971), 257 Ind. 336, 274 N. E. 2d 396, 27 Ind. Dec. 427. The principle of law set out in the *Maynard* case has been followed by many other courts, including the Supreme Court of the United States. See *Chapman* v. *Calif.* (1967), 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705.

In the case at bar the trial judge successfully maintained the decorum of the presentation of evidence so as to afford the defendant a fair trial.

Appellant has cited many cases wherein this Court has held that misconduct of a Prosecuting Attorney was of such a nature that an admonition to the jury would be insufficient, and that a mistrial should be granted.

We hold that the situation in the case at bar did not reach such a magnitude.

Appellant also claims the trial court should have granted a mistrial because the Prosecuting Attorney implied in his closing argument that Jesse Merriweather was not telling the truth because he was afraid to testify.

Appellant claims this conduct on the part of the Prosecuting Attorney violated the Code of Professional Responsibility,

DR 7-106(C)(3) and (4). The pertinent part of this rule reads as follows:

"(C)   In appearing in his professional capacity before a tribunal, a lawyer shall not.

\* \* \*

"(3)   Assert his personal knowledge of the facts in issue, except when testifying as a witness.

"(4)   Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

As previously pointed out, the statements of the Prosecuting Attorney were ruled to be improper by the trial court, and the jury was ordered to disregard those statements.

Appellant cites the case of *Commonwealth* v. *Potter* (1971), 445 Pa. 284, 285 A. 2d 492, in which the Supreme Court of Pennsylvania reversed a conviction because of misconduct on the part of the Prosecuting Attorney, wherein he had on cross-examination of the defendant accused him of a "malicious lie." The trial court overruled a motion for a mistrial; however, instead of making any admonition to the jury, the trial court merely stated, "I criticize you for characterizing it that way. You don't need to do that." The Pennsylvania Supreme Court in citing the above rule correctly observes that a Prosecuting Attorney has a position of responsibility both as an administrator of justice and an advocate, and that he must exercise discretion in the performance of his duties. With this we heartily agree.

We are unwilling, however, to hold that every deviation from exemplary conduct by a Prosecutor must automatically result in a mistrial. In the Pennsylvania case there was no admonition to the jury, merely a statement of criticism of the Prosecuting Attorney. In the case at bar the admonition was

immediate and complete, and we hold, in view of the record in this case, sufficient to insure a fair trial.

Appellant next claims misconduct on the part of the Prosecuting Attorney during the testimony of Police Officer Paul Meth. In response to a question by the Prosecuting Attorney, Officer Meth testified that after he had arrested the appellant, he returned him to the Zesto Restaurant. In addition to other things, he stated, "There were, also, some witnesses there who identified the man who was in the back seat" (referring to the appellant). Appellant moved for mistrial on the ground the court had previously sustained a motion to suppress evidence of identification of the appellant at that time. The court's ruling on the motion to suppress reads as follows:

"COURT: I will sustain the defendant's motion as to Jesse Merriweather, Wanda Lewis and Dora Merriweather. Each of those witnesses during the testimony indicated that they based their identification primarily upon the nature of the defendant's clothing and his hair. I am going to overrule the motion as to Martha Shelby because she gave some other identifying factors such as the alleged size, the fact that the eyes were the same in her opinion and other identifying factors that makes me feel that her identification was a more positive identification. As far as Stephen Hardesty, I think that was at a lineup procedure and I think there is evidence in the case that the defendant was represented by counsel at that time. If there were any procedures that were not considered to be regular I think the attorney could have cross-examined on that plus the fact that there are factors sufficient to indicate to the Court that that was a fair lineup anyway as fair as some of these cases that have been cited to the Court. The Court is concerned about accepting identifications which are shown by the evidence to have been primarily on the basis of clothing and hair style alone. As to evidence that will come as to identification, of course, we will have to meet that when we get to the actual trial."

The record shows that not only Martha Shelby identified the appellant at that time, but on cross-examination of the defendant's witnesses, Dora Merriweather and Wanda Lewis,

each admitted that they had identified the person returned by the police officer to the Zesto Restaurant on the night of the shooting. We, therefore, fail to see any harm resulting from the statement of the officer that there were some witnesses who identified the appellant at that time. This fact became apparent to the jury in the course of the trial. We hold the trial court did not err in refusing to withdraw the submission for that reason.

Appellant next claims the trial court erred in permitting the testimony of George Virgin, who testified that he conducted a paraffin test on appellant's hands, the result of which showed the presence of nitrate on the right hand of appellant. The test of the left hand revealed no nitrate. The witness testified that the reason for the giving of such a test was to determine if the subject had fired a weapon a short time prior to the test. It is appellant's position that this witness was not sufficiently qualified as an expert to make such a test and render such an opinion. This Court has previously held that the question as to whether a witness is qualified as an expert is one for the determination of the trial court based upon the testimony of the witness. *Pettit* v. *State* (1972), 258 Ind. 409, 281 N. E. 2d 807, 30 Ind. Dec. 486; *Eskridge* v. *State* (1972), 258 Ind. 363, 281 N. E. 2d 490, 30 Ind. Dec. 354.

Extent of the witness' knowledge does not necessarily determine his competency as an expert but goes to the weight of his testimony to be determined by the jury. *Spencer* v. *State* (1958), 237 Ind. 622, 147 N. E. 2d 581.

In the case at bar, although the witness could not answer all questions posed to him on cross-examination concerning possible results of such a test on various chemicals and substances named by examining counsel, such questions and answers were properly submitted to the jury for the purpose of testing the credibility and expertise of the witness. The witness did testify in some detail as to the manner in which the test was conducted and the results which are found on

the hands of a person who has previously fired a firearm. The trial court did not err in submitting the testimony of George Virgin to the jury.

Appellant lastly maintains the Prosecuting Attorney was guilty of misconduct on cross-examination of appellant's character witnesses in that the Prosecuting Attorney referred to prior arrests and conviction of the appellant. This Court has been required to pass on this question many times. In *Jordan* v. *State* (1953), 232 Ind. 265, 110 N. E. 2d 751, this Court stated at page 268:

> "When a defendant tenders his supposed good character in evidence, he thereby invites scrutiny and disclosure of specific instances of his misconduct to depreciate the weight of the testimony of his character witness, although the answers elicited may incidentally impute to him other guilt."

See also *Woods* v. *State* (1954), 233 Ind. 320, 119 N. E. 2d 558.

The cross-examination in the case at bar was to ascertain whether or not witnesses who had testified to appellant's reputation for good character knew or had heard rumors of prior misconduct of the appellant. The trial court did not err in permitting this type of cross-examination of a character witness.

We find no reversible error in this record.

The trial court is, therefore, affirmed.

Arterburn, C.J., Hunter and Prentice, JJ., concur; De-Bruler, J., concurs in result.

NOTE.—Reported in 296 N. E. 2d 788.

## ON PETITION FOR REHEARING

GIVAN, J.—The appellant has filed a petition for rehearing in which he alleges among other things that this Court failed to give an opinion in writing as to the question of whether it is proper for the prosecuting attorney to ask a character witness the following question: "Did you know that on the 23rd day of March, 1963, he (the appellant) was found to be

an incorrigible juvenile?" Appellant takes the position that to allow such question would be in violation of the mandate set forth in BURNS' IND. STAT. ANN., (1972 Supp.), § 9-3215, IC 31-5-7-15, the pertinent part of which provides as follows:

". . . The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court. . . ."

There is no question but what evidence of the disposition of a juvenile matter is not admissible in a subsequent prosecution in order to show a prior conviction to affect the credibility of the defendant as a witness. See *Woodley* v. *State* (1949), 227 Ind. 407, 86 N. E. 2d 529. As stated in the *Woodley* case the disposition of a juvenile does not constitute a criminal conviction and cannot be used by the State as such in attacking the credibility of a defendant. However, an entirely different principle of law prevails when a defendant directly places his reputation in the community before the jury through character witnesses. As stated in our original opinion:

"When a defendant tenders his supposed good character in evidence, he thereby invites scrutiny and disclosure of specific instances of his misconduct to depreciate the weight of the testimony of his character witness, although the answers elicited may incidentally impute to him other guilt." *Jordan* v. *State* (1953), 232 Ind. 265, 268, 110 N. E. 2d 751.

Although juvenile matters are secret and the results thereof not open to public scrutiny as a general proposition, a defendant who places his reputation before the jury through character witnesses opens his entire life to scrutiny in order that the jury may determine whether the so-called character witness is, in fact, conversant with the defendant's reputation in the community about which he is purporting to testify.

We, therefore, hold that the statement in the original opinion applies to the juvenile matters as well as to all other prior conduct of the appellant.

Other matters raised in the petition for rehearing have been adequately dealt with in the original opinion.

Arterburn, C.J., and Prentice, J., concur; DeBruler, J., concurs in result with opinion; Hunter, J., dissents.

OPINION CONCURRING IN RESULT

DeBruler, J.—I vote to deny rehearing. However, I cannot join in the majority opinion on rehearing written by Justice Givan. I vote to deny rehearing because the legal issue presented in appellant's petition for rehearing was not preserved for appeal by a timely and adequate objection at trial. *Wells* v. *State* (1970), 254 Ind. 608, 261 N. E. 2d 865. I would resolve the issue in favor of appellant.

We are admonished by IC 1971, 31-5-7-2, being Burns § 9-3202, to construe the provisions of the juvenile statute liberally in order to further the purposes sought by it. Applying and construing the exclusionary rule erected by IC 1971, 31-5-7-15, being Burns § 9-3215, in this manner, I would hold that this question is barred. The question posed to the witness was whether the witness had heard that the accused had been determined to be a juvenile delinquent. This question carries with it the clear implication that the accused was in fact found to be a juvenile delinquent. Questions which would naturally lead a jury into the zone of subject matter excluded from its consideration by this statute, should be prohibited by the trial court. This was such a question.

NOTE.—Reported in 301 N. E. 2d 636.