**James UNDERWOOD, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 02S00–8712–CR–1178.**

Supreme Court of Indiana.

March 6, 1989.

Barrie C. Tremper, Public Defender of Allen County, Linda M. Wagoner, Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of Murder for which he received a sentence of forty (40) years.

The facts are: On January 16, 1987, several people were attending a party at the home of Eddie Walker in Fort Wayne. Among those present were Roderick (Roger) Houston, the victim in this case, and Adeline Underwood, the sister of appellant. In the course of the evening, Adeline and Houston argued over some beer. During the argument, Houston struck Adeline in the face causing bruises and swelling. Houston apologized and Adeline accepted the apology.

Appellant was not at the party at the time of the altercation but was informed of the incident by a mutual friend. Appellant then went to the scene of the party where he questioned his sister about the incident. When appellant saw the extent of the damage to his sister's face, he became quite angry and confronted Houston in the entryway of the home as he was about to depart. A struggle ensued in which Houston first was struck a blow to the head, which a doctor testified was sufficient to render him unconscious. Appellant stated that the blow to the head was delivered by a gun which he was holding in his hand. Appellant claimed that the gun accidentally discharged striking the victim in the head.

However, the doctor testified that in his opinion the victim was in a prone position on the floor at the time he was shot. The doctor also testified that the victim died from the gunshot wound.

Appellant claims the trial court erred in failing to instruct the jury on lesser included offenses. This Court has repeatedly held that any appreciable evidence of sudden heat justifies an instruction on voluntary manslaughter. *Finch v. State* (1987), Ind., 510 N.E.2d 673; *Wright v. State* (1985), Ind., 474 N.E.2d 89; *Palmer v. State* (1981), Ind., 425 N.E.2d 640.

However, in the case at bar, appellant made no attempt to present a defense of sudden heat or self-defense. His entire defense was that the shooting was entirely accidental, that it was the victim who precipitated the attack, and that in defending himself appellant intended only to strike the victim on the head with the gun and in so doing the gun accidentally discharged.

Therefore the evidence which would be necessary to justify the jury in reducing the murder charge to a voluntary manslaughter charge was not presented.

In order for the court to give an instruction on a particular included offense, there must be evidence of probative value from which the jury could properly find the commission of the lesser included offense. *Brown v. State* (1985), Ind., 485 N.E.2d 108. In the case at bar, there was no evidence to warrant giving the tendered instruction on voluntary manslaughter.

■ Appellant argues that inasmuch as the State charged battery in addition to the murder charge, the trial court should have given an instruction on involuntary manslaughter. Appellant reasons that because battery is a lesser included offense under a charge of involuntary manslaughter, the trial court should have given his tendered instruction on involuntary manslaughter. We fail to follow appellant's reasoning in this regard.

Inasmuch as the victim died of his injuries, we fail to follow the State's reasoning in charging a battery. However, be that as it may, the trial court correctly merged the two convictions and correctly sentenced appellant on the murder charge only.

As above pointed out, in order for the trial court to be justified in giving an instruction on an included offense, there must be evidence before the jury that the included offense was committed. In the case at bar, although appellant claimed accidental shooting, the evidence was that he came to the house with the intent to confront the victim, that he approached the victim with gun in hand, that he struck the victim with force sufficient to render him unconscious, and that while the victim lay on the floor, appellant shot him.

When one uses a deadly weapon in a manner likely to cause death or serious injury, the jury is entitled to infer intent to kill. *Cole v. State* (1985), Ind., 475 N.E.2d 306. In spite of appellant's protestations that he only intended to beat up the victim, the fact that he approached the victim with gun in hand belies appellant's claim. The evidence in this case does not justify the giving of an involuntary manslaughter instruction.

■ Appellant uses essentially the same argument to support his contention that the trial court erred in refusing to give his instruction on criminal recklessness. For the reasons above stated, we hold the evidence in this case sustains the trial court's position that criminal recklessness was not an issue before the jury.

■ Appellant claims the trial court erred in refusing to give his instruction advising the jury that if they found him to be of less than normal intelligence they could consider that fact to determine whether he had the ability to know and appreciate the wrongfulness of his conduct. In the case at bar, there was no attempt to formulate a defense of insanity. Low mental capacity is not sufficient to establish that a defendant lacked the requisite capacity to form intent. *Hester v. State* (1987), Ind., 512 N.E.2d 1110. The trial court did not err in refusing to instruct the jury concerning appellant's diminished mental capacity.

■ Appellant also claims the court erred in failing to give his Tendered Instruction No. 4 which concerned the testimony of the medical expert, Dr. Lucas. However, the instruction tendered was one to be given when an expert witness states his opinion based upon a hypothetical which has in turn been based upon evidence which has been submitted from other sources at the trial. Such was not the case with Dr. Lucas' testimony. Dr. Lucas testified as to what he personally found by his examination of the victim's body. Thus, the instruction did not apply to the nature of the testimony of Dr. Lucas. For the trial court to have given such an instruction would have confused the jury and misled them concerning the doctor's testimony. Thus, it was not error to refuse to give such an instruction. *Eddy v. State* (1986), Ind., 496 N.E.2d 24.

■ Appellant also claims the trial court erred in refusing to give his Tendered Instruction No. 5 concerning the possible de-

fenses available to a defendant. The instruction purports to tell the jury that they are not confined to any specific defenses such as self-defense or accident, but they are entitled to consider any "possibility of any number of defenses." Again, such an instruction would be confusing and misleading to a jury and would encourage them to speculate without evidence as to appellant's motivation. Such an instruction is improper. *Id.*

Appellant claims the trial court erred in giving the State's instructions concerning the inference of intent to kill from the use of a deadly weapon in a manner likely to cause death or great bodily harm. The instructions given were a correct statement of the law. *Cole, supra; Wagner v. State* (1985), Ind., 474 N.E.2d 476. We see no error in the giving of these instructions.

■ Appellant claims the trial court erred in giving an instruction which included the statement, "In order to return a verdict of guilty or innocent, you must all agree." Appellant claims that the word "innocent" was a misstatement of the law and the instruction should have read "not guilty" in place of "innocent." Appellant posits that once the jury has been told that the person is either guilty or innocent they would be confused into believing that in order to be found not guilty the person would have to be a totally "innocent person." We feel this is a somewhat strained and specious argument. The words "innocent" and "not guilty" are constantly interchanged in legal and lay parlance. It is quite common to find the statement "presumption of innocence" concerning a charged crime. We find no reversible error in the court's use of such terminology.

■ Appellant claims the trial court erred in its handling of an inquiry made by the jury during their deliberations. The jury commenced its deliberation at approximately 10:11 a.m. and at noon the court reassembled the parties and informed them that at 10:35 a.m. he had received a question from the jury, which was "[t]he jury would like to view the videotape of James Underwood's confession. A written copy would be even better." The judge in-

formed the parties that at that time he had replied to the jury that they would not be furnished an opportunity to review the confession or a written copy. He further informed the parties that at 11:50 a.m. the jury had requested a rereading of the instructions, which the court intended to do at that time.

Appellant's attorney then moved the court that the jury be permitted to review the videotaped statement; the court, however, refused his request. Allowing a jury to view a single piece of evidence is ordinarily viewed as unduly emphasizing such evidence and is considered improper. *See Shaffer v. State* (1983), Ind., 449 N.E.2d 1074. In that case, this Court held that the trial court abused its discretion by sending to the jury tapes of defense witnesses' testimony, which was contested by the State. The decision to send the requested evidence to the jury for its viewing was a matter of the court's discretion. *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309. The trial court did not commit reversible error in refusing to allow the viewing of the videotape or to supply a transcript thereof.

■ Appellant claims the trial court erroneously prevented him from questioning certain State's witnesses about prior altercations between the victim and appellant. However, appellant concedes that such evidence was in fact eventually brought out by direct examination of appellant's witnesses. The exclusion of evidence is not erroneous if substantially similar evidence is subsequently introduced and admitted. *Sherelis v. State* (1986), Ind., 498 N.E.2d 973.

■ Appellant also claims the trial court erred in permitting Dr. Lucas to testify that in his opinion the victim was lying prone at the time the fatal shot entered his head. Appellant points out that Dr. Lucas testified that he was not a forensic pathologist but was a pathologist and explained the difference between the two. Appellant thus takes the position that because Dr. Lucas conceded he was not a forensic pathologist he was therefore not in a position to give an expert opinion on the victim's

position at the time the fatal shot was fired.

First of all, we point out that appellant made no objection when Dr. Lucas gave such an opinion. Thus, the issue was waived. *McCraney v. State* (1981), Ind., 425 N.E.2d 151. Appellant claims that his failure to object at that time was superseded by the fact that he had generally objected to the doctor testifying as to the type of instrument used to cause the particular injuries on the ground that the witness was not a qualified forensic pathologist. Appellant thus contends he was not required to renew his objection every time the doctor stated an opinion, citing *Kennedy v. State* (1972), 258 Ind. 211, 280 N.E.2d 611. We agree with appellant in this observation.

However, the fact remains Dr. Lucas was a medical doctor skilled in pathology. The fact that he had received no training in forensic medicine did not wholly disqualify him from giving medical testimony. The evidence as to the degree of the doctor's expertise in this field was placed squarely before the jury. The doctor was subjected to direct and cross-examination concerning his opinions and how he came to those conclusions. We cannot say that the trial court erred under these circumstances in permitting the jury to hear the doctor's conclusion. Whether a witness is qualified as an expert is to be determined by the trial court. *Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149.

The extent of the witness's knowledge merely goes to the weight of his testimony and thus is a matter for the consideration of the jury. *Lineback v. State* (1973), 260 Ind. 503, 296 N.E.2d 788, *cert. denied*, 415 U.S. 929, 94 S.Ct. 1440, 39 L.Ed.2d 487.

In view of Dr. Lucas' candid disclosure of his qualifications and the limitations thereof, we cannot say that the trial court erred in permitting him to testify before the jury.

■ Appellant claims the trial court improperly limited cross-examination. Appellant sought to cross-examine the State's witness concerning the actual measurements of the entryway in which the victim was found following the shooting. His

stated purpose was to question the witness to show that there was insufficient room in the entryway for the deceased to have been lying flat on the floor as opined by Dr. Lucas.

In examining this record, we are puzzled by this contention of appellant in view of the fact that State's Exhibit No. 4 is a photograph of the victim lying flat on his back in the entryway. The exhibit clearly speaks for itself; notwithstanding any testimony that might have been garnered concerning the dimensions of the entryway, the fact clearly demonstrated by State's Exhibit No. 4 could not have been contradicted.

■ Appellant claims the trial court erred in refusing to allow meaningful *voir dire* examination during jury selection. During appellant's counsel's questioning of prospective jurors Hood and Hartman, both of them indicated that they would find the defendant guilty if the State proved that he had killed someone regardless of the method charged by the State in its charging information. An examination of the line of questioning from this record indicates that it was somewhat confusing to the jurors. In fact, the trial judge finally stated: "I'm very confused here. I don't understand the question myself." The trial judge later stated that he could not understand why the State had not objected to that line of questioning.

Appellant appears to take the position that such conduct on the part of the trial court prejudiced him in front of the jury. We see no indication in this record that any juror served who was unqualified to serve. Appellant has shown us nothing to indicate that counsel was in fact interfered with to any marked degree during the *voir dire* of the jury.

■ Appellant claims the trial court permitted prosecutorial misconduct early in the *voir dire* examination when the State began lecturing the jury and defining the defense of self-defense, followed by a plea on the part of the prosecuting attorney for the jury to place themselves in the shoes of the deceased and the deceased's relatives.

Appellant further claims that when the case finally reached the presentation of evidence the State at every opportunity inserted comments designed to discredit the attorney for appellant. However, the examples cited by appellant appear to be no different than remarks heard in many jury trials as counsel spar for position and attempt to best their opponent.

Appellant concedes "none of the errors alone would have risen to the level of peril necessary to warrant a new trial. However, the deliberate and unrelenting pattern of misconduct denied the defendant a fair trial," citing *Roberts v. State* (1981), Ind.App., 419 N.E.2d 803. This Court has held that where we find no individual error we will not find cumulative error. *Halbig v. State* (1988), Ind., 525 N.E.2d 288, citing *Stonebraker v. State* (1987), Ind., 505 N.E.2d 55.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., dissents without separate opinion.