KELLEY *v.* STATE OF INDIANA

[No. 28,807. Filed March 11, 1953.]

*T. Ernest Maholm,* of Indianapolis, and *Harris W. Avery,* of Greenfield, for appellant.

*J. Emmett McManamon,* Attorney General, *William T. McClain* and *John Ready O'Connor,* Deputy Attorneys General, for appellee.

EMMERT, C. J.—A jury by its verdict found appellant guilty of murder in the first degree while in the perpetration of a robbery as charged in the first count of an indictment, and fixed the punishment at imprisonment for life. This count was not tested by a motion to quash under §9-1129, Burns' 1942 Replacement, but before sentence appellant filed a motion in arrest of judgment, under §9-2001, Burns' 1942 Replacement, which was overruled by the trial court, and this ruling is assigned as error here.

The averments of the first count questioned here are as follows:

"The Grand Jurors . . . on their oath present that one Michael Kelley, on the 10th day of June, A. D. 1950, at said County and State aforesaid, did then and there unlawfully feloniously kill and murder one Albert M. Thayer in the perpetration of a robbery by then and there unlawfully and feloniously beating, striking, choking, kicking and hitting with a blunt object the body and head of the said Albert M. Thayer, thereby inflicting a mortal wound upon the said Albert M. Thayer, of which mortal wound the said Albert M. Thayer then and there sickened and languished, and of which mortal wound the said Albert M. Thayer died on or about the 10th day of June, 1950 in the county and state aforesaid, . . ."[1]

The manner and means of causing death were not charged with the technical exactness generally found in an indictment for murder in the first degree, but it is not necessary to decide whether this part of the charge was sufficient if it had been questioned by a motion to quash under the fourth clause of §9-1129, Burns' 1942 Replacement, that the indictment did not state the offense with sufficient certainty.[2]

---

[1] The remainder of said indictment is as follows: "* * * the said Michael Kelley then and there being engaged in the perpetration of the crime of robbery by then and there feloniously, forcibly and by violence robbing, taking and stealing from the person and possession of the said Albert M. Thayer, cash money in the amount of $28.00, one wrist watch and one automobile, all then and there belonging to the said Albert M. Thayer and then and there being of the total value of $2,000.00. And so, the Grand Jurors aforesaid, upon their oaths aforesaid, do say and charge that the said Michael Kelley in manner and form aforesaid, unlawfully and feloniously did kill and murder the said Albert M. Thayer in the perpetration of a robbery, contrary * * *"

[2] Section 9-1129, Burns' 1942 Replacement, provides in part

There was evidence in the record that the appellant, who was then 16 years of age, conspired with one Carol Dooley to rob the decedent, and this plan was made known to one of their friends, James Chalfin, who agreed to the robbery. At the scene of the crime, after the decedent had exhibited some manifestations of unnatural affection toward Dooley and appellant, a fight occurred between him and appellant and Dooley, in which affray Chalfin later joined, during which the victim was hit and struck on and about the face and his body with fists, a black metal toy-cap pistol, the heel of a shoe used as a club, and the victim was also kicked by one of the three. The force of the blows fractured the victim's skull in two places and caused a concussion of the brain, from which he died before the next morning. There was no absence of a statement of the manner of death and the means by which it was effected. In *Romary* v. *State* (1945), 223 Ind. 667, 670, 671, 64 N. E. 2d 22, this court stated the law applicable under the record in this appeal as follows:

> "In considering a motion in arrest, all merely technical defects will be disregarded. *Woodsmall* v. *State* (1913), 179 Ind. 697, 699, 102 N. E. 130, and a fact fairly and rationally inferable from facts pleaded, though stated argumentatively and indirectly, may be deemed as averred. *Agar* v. *State* (1911), 176 Ind. 234, 94 N. E. 819. A material fact, constituting the offense, if stated in a defective manner or form, may on motion to quash, render the indictment or affidavit insufficient, while such defect, on motion in arrest, would be cured by verdict. *Woodworth* v. *The State* (1896), 145 Ind. 276, 43 N. E. 933 and cases cited; *Woodsmall* v. *State, supra*. The evidence may cure a

---

as follows: "The defendant may move to quash the indictment or affidavit when it appears upon the face thereof either: * * *

"Fourth. That the indictment or affidavit does not state the offense with sufficient certainty."

defect in the affidavit as against a motion in arrest. *Jenkins* v. *State* (1919), 188 Ind. 510, 514, 124 N. E. 748; *Crumley* v. *State* (1933), 204 Ind. 396, 398, 184 N. E. 533."

See also *Pope* v. *State* (1949), 227 Ind. 197, 201, 84 N. E. 2d 887. Any indefiniteness was cured by the evidence, and there was no error in overruling the motion in arrest of judgment.

The robbery and homicide occurred on a private roadway about 100 rods from a public highway near Mt. Zion Church in Fall Creek Township, Hamilton County. After the decedent became unconscious he was dragged a short distance, and Kelley removed from his person a billfold, which contained $28.00, and a watch. Dooley's shirt had blood on it, and this was left on a small bush near the body. Kelley threw away the cap pistol, which was never found. They took decedent's Oldsmobile car and drove back to Kelley's home where Dooley put on another shirt, and then the three started out westward on U. S. Highway No. 40 for California.

The next day, which was Sunday, June 11th, at about noon, about four miles west of Springfield, Missouri, on highway No. 166, the Oldsmobile of decedent in which appellant, Dooley and Chalfin were riding, collided with a tractor-trailer truck in the middle of a long bridge, thereby causing the truck to "jackknife" and sideswipe a third vehicle. As a result of the collision the gasoline tank on the truck was broken, spreading gasoline on the truck driver. The sparks from the collision ignited the gasoline and the truck driver jumped off of the bridge in order to extinguish the flames, but he was burned so severely he subsequently died. Appellant, Dooley and Chalfin were taken to the hospital in Springfield and thereafter put in custody in the county jail. Appellant received a cut lip, but was not uncon-

scious at any time. Each was placed in a separate cell at the jail, and thereafter each was questioned separately by the officers there.

We have carefully examined the entire record and we are of the opinion that the statement which appellant made to the authorities in Springfield, which was not introduced in evidence at the time of the trial, was not coerced, nor was appellant deprived of due process of law under the Fourteenth Amendment. Appellant was questioned separately several times by several officers during the daytime and nighttime. However, there is no contention by appellant that any physical force was used upon him, nor was he deprived of food or water. The evidence does not show he was physically or mentally exhausted at the time of any questioning. His cell had a bunk in it and a light, and according to appellant's own testimony he slept quite often. The following Monday his mother, sister, and two brothers-in-law from Indianapolis visited with him in his cell for 15 to 25 minutes. No officer was in the cell when this occurred. Even if it be assumed that the statement made to the Missouri officers had been coerced, there is no evidence in this record to show that the effects of the coercion continued to make the written statement given to the coroner of Hamilton County coerced or in violation of due process of law.[3]

A criminal charge arising out of the accident in Missouri was filed against appellant, Dooley and Chalfin, and they were taken into court and informed of the

[3] "But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." *United States* v. *Bayer* (1947), 331 U. S. 532, 540, 541, 67 S. Ct. 1394, 1398, 91 L. Ed. 1654, 1660.

charge and that bond had been fixed in the sum of $5,000. On Tuesday, June 13th, the officers from Hamilton County arrived and transported the three back to Noblesville, where they arrived the morning of Wednesday, June 14th, and were taken to the City Hall in Noblesville. The Mayor of Noblesville, ex-officio judge of the city court, in open court had the prosecuting attorney read the preliminary affidavit charging them with murder, and the mayor informed each he was not required to enter any plea or make any statement and that they were entitled to have counsel represent them. They were then ordered held by the sheriff without bail. Later in the same day Dr. C. M. Donahue, the coroner of Hamilton County, requested appellant to make a statement, and appellant told the story of the offense in the presence of the coroner, the prosecuting attorney, the sheriff, and two police officers of Noblesville, which statement was reduced to writing by the coroner and signed by appellant. Before the statement was made the prosecuting attorney told him he was not required to make any statement of any kind, that he had the right to say nothing, that he was entitled to counsel, and if it was necessary the court would appoint counsel for him, that he was entitled to a trial by jury and that any statement he made would have to be made voluntarily and he was not being threatened with anything, nor could he be promised anything for making the statement. This statement was introduced in evidence after the court held a hearing on its admissibility out of the presence of the jury.

"This court has frequently held that a confession is *prima facie* admissible and that the burden of showing its incompetency is on the defendant. *Caudill* v. *State* (1946), 224 Ind. 531, 538, 69 N. E. 2d 549, 552, and cases cited; *Milbourn* v. *State of*

*Indiana* (1937), 212 Ind. 161, 163, 8 N. E. 2d 985, and cases cited." *Schuble* v. *State* (1948), 226 Ind. 299, 304, 79 N. E. 2d 647. Appellant, although only 16 years of age, had completed two years of high school. He said he did not know the meaning of the word "counsel," but he had had the opportunity to advise with his mother and his relatives while he was being held in Missouri. The eminent trial judge certainly had the right to infer that appellant understood that he had the right to refuse to answer any questions, and that there was no evidence whatever that his confession was made under the influence of fear or threats, intimidation or undue influence. Even if appellant did not understand that he was entitled to the advice of a lawyer before he made a statement, this alone would not make the confession inadmissible under the facts in this record. There was no error in admitting the confession in evidence.

After the statement had been signed by appellant, he and Dooley and Chalfin were taken to the scene of the crime where in the presence of several witnesses they pointed out the places various acts had occurred, and a picture was taken of them at the scene. There was no error in admitting photographs of them at the scene of the crime, nor in admitting evidence as to what they said while they were there, nor was there any error in permitting the witness Donald Mier, a newspaper reporter of Missouri, to testify as to what appellant had told him while he was being held in Missouri.

The appellant asserts the trial court committed reverisible error in refusing to withdraw the submission of the cause to the jury on account of misconduct of a deputy prosecuting attorney during the final argument for the state. A special bill of excep-

tions discloses that a deputy prosecuting attorney during final argument displayed to the jury a toy cap pistol which had not been introduced in evidence, and which he stated he had obtained from his grandchild. The trial court at once instructed the jury that this toy cap pistol was not a part of the evidence and its exhibition was improper and that the jury should not consider it in any way as evidence. In the final instructions to the jury the trial court again instructed the jury that they should not consider this toy pistol as any evidence or consider it in any way in determining the issues in the cause. This misconduct of counsel was not so gross that it could not be cured by the instructions given by the court, and the jury must have thoroughly understood that the toy pistol was not part of the evidence and that it was not to be considered in any way as affecting the alleged guilt of the appellant. The trial court promptly sustained appellant's objections, and on appeal we must presume the jury complied with the court's instructions.

In view of the youth of appellant and the serious nature of the charge, we have carefully examined the entire record to determine for ourselves that a fair trial was had. He was represented by competent counsel before and during the time of trial. We find nothing to indicate that he was deprived of any of his legal or constitutional rights, and the trial judge who presided during the trial fairly and adequately instructed the jury on the law involved. We believe every requirement of due process of law was observed. The verdict is amply sustained by the evidence and it was not contrary to law.

Judgment affirmed.

NOTE.—Reported in 110 N. E. 2d 860.