DONALD R. SCEIFERS *v.* STATE OF INDIANA.

[No. 776S231. Filed March 3, 1978.]

*Daniel B. Burke, Jr.,* of New Albany, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles D. Rodgers,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Sceifers was indicted for two counts of first-degree murder in connection with the shooting deaths of his wife Teresa and the man she was seeing, Herman Lilly. He filed pleas of not guilty by reason of insanity. At the conclusion of a jury trial in Floyd Circuit Court on July 23, 1975, appellant was convicted of lesser-included offenses for both killings and received concurrent sentences. For the killing of Herman Lilly, appellant was convicted of voluntary manslaughter and sentenced to two to twenty-one years imprisonment. For the killing of Teresa Sceifers, he was convicted of second-degree murder and sentenced to life imprisonment.

Six arguments are presented for our review in this appeal: (1) whether contact between jurors and relatives of the decedent Herman Lilly necessitated a mistrial; (2) whether the jury was adequately questioned about exposure to prejudicial trial publicity; (3) whether the conduct of the prosecutor during final argument erroneously prejudiced the defendant; (4) whether the state's tendered instruction on the insanity defense was erroneously given; (5) whether the state's tendered instruction on reasonable doubt was erroneously given; (6) whether the verdicts are supported by sufficient evidence on the issue of appellant's sanity.

I.

In a motion for a mistrial, appellant argued that he was prejudiced by two incidents in which relatives of the decedent Herman Lilly allegedly had contact with the jury. First, it was alleged that Herman Lilly's sister had a conversation with a prospective juror. Second, it was alleged that when

the jury visited the scene of the crime, they had contact with four of Herman Lilly's relatives, three who were prospective state's witnesses and two who ultimately testified. This motion for mistrial was overruled, and appellant asserts error upon such denial.

Relative to the first incident, appellant established by testimony outside the presence of the jury that Herman Lilly's sister talked to a prospective juror while he was seated in the courtroom. The prospective juror testified that Lilly's sister identified herself as the sister of the deceased, and told him that the appellant was not insane. This conversation took place before the impaneling of the jury, and the prospective juror in question did not become a member of the sworn jury panel. There was no showing that any seated member of the jury or any alternate juror had such a conversation with decedent Lilly's sister. Further, the trial court questioned the jury about whether any of them heard or overheard a conversation with anyone in the courtroom concerning the trial, and no juror or alternate juror answered in the affirmative.

Appellant cites the cases of *Woods* v. *State*, (1954) 223 Ind. 320, 119 N.E.2d 558, and *Spencer* v. *State*, (1958) 237 Ind. 622, 147 N.E.2d 581, as authority for the alleged error in the conversation between Lilly's sister and the prospective juror. In *Woods*, the evidence was undisputed that police officers, who were witnesses for the state, visited and conversed with the jury during a recess in a trial. In *Spencer*, the jury was allowed to mingle freely with all spectators and participants at the trial during recesses. These situations are both clearly distinguishable from the present set of facts. "We are justified in disturbing a verdict of guilty on account of the alleged misconduct of a juror only when it is shown that such misconduct was prejudicial to the rights of the defendant, or when such a state of facts is shown that it

may fairly be presumed therefrom that the defendant's rights were prejudiced." *Myers* v. *State*, (1960) 240 Ind. 641, 168 N.E.2d 220; *Trombley* v. *State*, (1906) 167 Ind. 231, 78 N.E. 976. Since the prospective juror in this case did not become a member of the jury or an alternate, and since his conversation with decedent's sister was not overheard by the jury, there is no showing of prejudice here. There was no error in denying appellant's motion for mistrial relative to this incident.

The second allegedly prejudicial incident in this context occurred when the jury viewed the scene of the killing. Appellant had requested this view, and it was agreed to by the state. The jury was then transported there by the Floyd County Sheriff's department in the custody of the court bailiff. Four of Herman Lilly's relatives, who were listed as witnesses for the state in this cause, were at the scene, along with two other persons. Three of these relatives of decedent Lilly lived there. There was no showing that any of these persons exhibited any misconduct during the view, nor was there any showing that any of them talked to any of the jurors. The jury was specifically asked about any possible misconduct or conversation, during the view, by the trial court on appellant's motion for a mistrial, and again there was no affirmative response. Appellant's trial attorney testified that he did not hear anyone talk to the jury during the view, and that the alleged misconduct of Lilly's relatives was nothing beyond the fact of their presence.

The cases of *Woods* and *Spencer, supra,* argued by appellant, are as inapplicable to this incident as they were to the first. There is no showing of prejudice here. *Myers, supra; Trombley, supra.* Further, appellant specifically requested this view and should have anticipated that some of Lilly's relatives, who lived there, would be present. The record, however, does not disclose that appellant ever requested the trial

court to take any protective measures beforehand to prevent possible contact between the jury and these persons. *Cf. Winkler* v. *Winkler,* (1970) 252 Ind. 136, 139, 246 N.E.2d 375, 376. In sum, appellant's allegation of prejudice in this incident is only supported by sheer conjecture and speculation. *Cf. Utterback* v. *State,* (1974) 261 Ind. 685, 690, 310 N.E.2d 552, 555. There was no error in denying appellant's motion for mistrial relative to this second incident.

## II.

Appellant next contends that the jury was inadequately questioned about their exposure to prejudicial trial publicity. This argument concerns a story which appeared during a recess in the trial, on July 18, 1977. Printed in "The Tribune," a local newspaper in New Albany, this story appeared on the front page with the headline, "Youths Point Finger of Guilt at Sceifers," and discussed some testimony presented by the state on the previous day. When the trial resumed, appellant made a motion for mistrial relative to this publicity. The court overruled the motion and polled the jury, asking them, "Did any member of this jury read, see or hear anything over the weekend that would tend to prejudice you concerning this trial?" All jurors answered this question negatively. Furthermore, the jury in this case was admonished daily not to talk to anyone concerning the case, not to read about the case, and not to allow anyone to talk to them about the case.

The trial court's polling of the jury here, to determine possible exposure to the prejudicial publicity, properly followed the guidelines of *Lindsey* v. *State,* (1973) 260 Ind. 351, 295 N.E.2d 819. The court's question was general in nature, but anything more specific might have called attention to the article and headline in question, and motivated a juror to seek out the story during another recess. In view of the negative response to this question, the

court was not required to begin the second stage under *Lindsey*, the individual polling of jurors exposed to the publicity. Finally, the court's daily admonitions to the jury adequately fulfilled the court's duty under the *Lindsey* case, of instructing upon the hazards of prejudicial exposure and of avoiding it even where no exposure has been shown. The argument of appellant on this issue is thus without merit.

### III.

Appellant's next argument of improper and erroneous prejudice concerns the conduct of the prosecutor during final argument. The prosecutor at this time demonstrated the operation of a .38 caliber revolver which had been admitted as a state's exhibit. He stated that the gun could not have been fired accidentally more than once without cocking it between shots. The appellant, during his testimony at trial, had discussed the fatal shootings and the use of the gun, but had not done any demonstration. Appellant at this time had testified that he remembered firing the gun more than once, but that he did not know why or how, or whether it was by accident. Four state's witnesses testified at trial that they saw appellant push Teresa Sceifers to the ground and then shoot her twice. Since there had been no demonstration of the gun during appellant's testimony, the court admonished the jury to disregard the prosecutor's demonstration during final argument. The prosecutor then made another comment about the lack of possibility of accidental shooting, and the trial court further admonished the jury to disregard this comment.

Appellant argues that the present case is similar to *Kelley* v. *State*, (1953) 231 Ind. 671, 110 N.E.2d 860, in which the prosecutor in final argument displayed a toy cap pistol which had not been admitted into evidence. The argument is that there was a similar lack of evidentiary background for the

demonstration here, since there had been no demonstration of the gun in evidence or expert testimony about its operation. Appellant is correct in this assertion, but ignores the fact that this case is like *Kelley* in one further respect: in *Kelley,* the trial court at once instructed the jury on the impropriety of the exhibition, and this court held that the error was not so gross that it could not be cured by such instructions. Similarly, we find the prompt admonitions of the trial court here sufficiently corrected the prosecutor's actions in this case. There is thus no error here.

## IV.

Appellant next contends that the state's tendered instruction on the insanity defense was erroneously given. The instruction given was identical to the insanity instruction held proper in *Fuller* v. *State,* (1973) 261 Ind. 376 at 381, 304 N.E.2d 305 at 309, and appellant's objections to such instruction here are the same as those made in that case. There is thus no merit in this argument.

## V.

The following instruction on reasonable doubt was tendered by the state and given by the trial court over objection by appellant, and is here argued as reversible error:

"The rule of law touching reasonable doubt is a fair, reasonable, and practical rule for the guidance of practical men, when engaged in the solemn and important duty of assisting in a fair, honest, and impartial enforcement of the criminal laws of the State of Indiana.

"But this rule of law which clothes every person accused of crime with the presumption of innocence, and imposes upon the State the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid anyone who is in fact guilty of crime to escape a just and well merited punishment, but is a humane provision of the law, intended insofar as human agencies can, to guard against the danger of any innocent person being unjustly punished. And by reasonable doubt, is not meant, a whim or capricious or speculative doubt. It is properly termed a reasonable doubt,

as distinguished from an unreasonable or speculative doubt, and it must arise from all of the evidence or absence of evidence relating to some material fact or facts charged in the indictment, *and not spring from mere subsidiary evidence.*"

Appellant is correct in his assertion that the emphasized portion of the above instruction made it erroneous as a matter of settled Indiana law. *White* v. *State,* (1955) 234 Ind. 309, 125 N.E.2d 705; *Jalbert* v. *State,* (1928) 200 Ind. 380, 165 N.E. 522; *Sharp* v. *State,* (1919) 188 Ind. 276, 123 N.E. 161. However, in reviewing instructions for harmful error, we are bound to consider the impact of the instructions as a whole. *Sypniewski* v. *State,* (1977) 267 Ind. 224, 368 N.E.2d 1359; *Tewell* v. *State,* (1976) 264 Ind. 88, 339 N.E.2d 792. In this case, the evidence was undisputed that appellant actually shot and killed Teresa Sceifers and Herman Lilly. Thus, the only issue of fact which could have been affected by the erroneous instruction on "mere subsidiary evidence" was the question of appellant's sanity. The jury was fully and properly instructed on all aspects of the insanity defense and criminal responsibility, with instructions tendered by the state, by the defense, and others given on the court's own motion. Further, the following instructions were given, all of which instructed the jury to consider all the evidence, and we believe that these would have made up for the deficiency in the erroneous reasonable doubt instruction:

"If, then you, and each of you, are so convinced *by the evidence of whatever class it may be, and considering all the facts and circumstances in evidence as a whole,* of the guilt of the defendant, that as prudent men and women you would feel safe to act upon such conviction in matters of the highest concern and importance to your dearest and most important interests, under circumstances where there is no compulsion or coercion upon you to act at all, then you will have attained such a degree of certainty as excludes reasonable doubt and authorizes conviction."

. . . .

"The law demands that all twelve of you concur in the conclusion that the accused is guilty before he can be con-

victed. Each individual on the jury must arrive at such conclusion separately, and each juror having in view the oath he has taken, and his duty and responsibility thereunder, should have his own mind convinced, beyond a reasonable doubt *upon all the evidence,* before he can conscientiously consent to a verdict of guilty."

. . . .

"A reasonable doubt may arise from the evidence or it may arise from lack of evidence. The defendant is not required to establish any fact which would entitle him to an acquittal by any certain amount of evidence, so that, *if the whole evidence or lack of evidence,* leaves a reasonable doubt in your mind or in the mind of any one of you as to the defendant's guilt of the offense charged in either Count 1 or Count 2 of the information, then you cannot find the defendant guilty of the Count or any degree of the Count in the information."

Thus, we find that considering the instructions as a whole, the error in the trial court's giving of the "mere subsidiary evidence" instruction was harmless in this case.

## VI.

The final argument presented here is that the verdicts were not supported by sufficient evidence on the issue of appellant's sanity.

When a defendant enters a plea of not guilty by reason of insanity, the burden of proving sanity beyond a reasonable doubt is on the state. *Montague* v. *State,* (1977) 266 Ind. 51, 360 N.E.2d 181, 187; *Johnson* v. *State,* (1970) 255 Ind. 324, 328, 264 N.E.2d 57, 59. Lay testimony, including opinions, is competent on the issue of sanity, *Williams* v. *State,* (1976) 265 Ind. 190, 352 N.E.2d 733, 742, as is all evidence which has a logical reference to defendant's sanity, including his sobriety and behavior on the day of the offense, *Howard* v. *State,* (1976) 265 Ind. 503, 355 N.E.2d 833, 835. When reviewing the sufficiency of the evidence supporting the conclusion by the trier of fact that the defendant was sane, we treat the issue like other questions of fact. *Montague, supra.* This court does not judge the

credibility of witnesses nor weigh evidence, but rather looks to the evidence most favorable to the state and the reasonable inferences to be drawn from that evidence. If there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be overturned. *Maxey* v. *State,* (1976) 265 Ind. 244, 353 N.E.2d 457, 459.

In this case, two experts were called by the trial court to testify on the sanity issue. Doctor Thomas Havens testified that he found no reason to think appellant was psychotic at the time the crime was committed, and Doctor David Irigoyen testified that in his opinion appellant was not insane at the time of the trial or at any time in the past of his life. There was lay testimony, from acquaintances of appellant, that he was polite and pleasant on the day before the shootings, and that there was nothing different or peculiar about him on either that day or the next. It was also established that appellant held a responsible position of employment as a foreman at the Naval Ordinance Plant in Louisville supervising twenty-five employees. Against the above evidence, appellant's insanity argument is simply based on evidence that he was hurt, jealous, and upset over his wife's seeing another man. Thus, it is clear that the evidence in this case meets our standard of review for sufficiency of evidence on the sanity question.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 373 N.E.2d 131.