**Robert W. WOLFE, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 1278S292.

Supreme Court of Indiana.

Oct. 5, 1981.

---

John F. Hoehner, Valparaiso, for appellant.

Theodore L. Sendak, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Murder, Ind. Code § 35–42–1–1 (Burns 1979), in a trial by jury and sentenced to imprisonment for fifty (50) years. His direct appeal raises the following issues:

(1) Whether Indiana's voluntary manslaughter statute unconstitutionally shifts the burden of proving the existence of sudden heat from the State to the accused.

(2) Whether the trial court erred in admitting into evidence Defendant's tape recorded statement.

(3) Whether the trial court erred in admitting into evidence a letter purportedly written by Defendant.

(4) Whether the trial court erred in giving instructions to the jury which incorporated the concept of "the reasonable person" into the doctrine of sudden heat.

(5) Whether the trial court erred in refusing to instruct the jury that sudden heat need not be "exclusive between the accused and the victim."

(6) Whether the trial court erred in instructing the jury concerning evidence of flight.

(7) Whether the trial court erred in failing to admonish the jury or to declare a mistrial in response to objections to the trial prosecutor's allegedly improper closing argument.

(8) Whether the trial court's instruction upon self-defense was incomplete.

(9) Whether the trial court erred in sentencing Defendant to fifty years imprisonment.

On October 28, 1977, Defendant, the deceased, and several other men were having an argument. One of the men said to the defendant, "Shoot the son of a bitch." Whereupon, Defendant shot the decedent four or five times. He then fled the scene but was arrested several days later at his brother's apartment in Hammond, a nearby city.

\* \* \*

ISSUE I

■ Defendant contends that Indiana's voluntary manslaughter statute unconstitutionally shifts the burden of proof upon an issue of sudden heat from the State to the accused. He relies upon the United States Supreme Court's holdings in the recent cases of *Mullaney v. Wilbur*, (1975) 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 and *Patterson v. New York*, (1977) 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281.

In *Mullaney*, the Supreme Court struck down a Maine statute which put the burden upon a Defendant, charged with murder, to prove by a preponderance of the evidence, in order to reduce the homicide to voluntary manslaughter, that he acted in a sudden heat of passion. The Court reasoned that such a shifting of the burden of proof upon "a fact so critical to criminal culpability" violates the Due Process Clause. *Mullaney*, 421 U.S. at 702, 95 S.Ct. at 1891, 44 L.Ed.2d at 522.

The Court found it necessary to examine Maine's statutory scheme of distinguishing between murder and manslaughter. Under the Maine statute, malice was an element of murder. The existence of sudden heat reduced what would otherwise be murder to manslaughter. The Court stated: "Satisfying this burden [of proving the absence of self defense] imposes an obligation that, in all practical effect, is identical to the burden involved in negating the heat of passion on sudden provocation." *Id.* Thus, the Court reasoned that placing upon the defendant the burden of proving the existence of sudden heat was tantamount to giving him the burden of disproving the existence of malice—an element of the crime. The Court further reasoned that since the presumption of innocence requires the prosecution to prove every fact necessary to constitute the crime charged beyond a reasonable doubt, citing *In Re Winship*, (1970) 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 a statute which, for all practical purposes places the burden on the defendant to disprove malice, violates due process.

Several years later the United States Supreme Court was called upon, in *Patterson, supra*, to determine the constitutionality of New York's homicide scheme. The New York statute required a defendant charged with murder in the second degree to prove the affirmative defense of "extreme emotional disturbance" by a preponderance of the evidence in order to reduce the crime to manslaughter. In a 5 to 3 decision, the Court upheld the statutory arrangement against a constitutionality challenge similar to that raised in *Mullaney*. The majority opinion distinguished the Maine case upon the basis that New York's murder statute did not include malice as an element of the crime, and held:

"We cannot conclude that Patterson's conviction under the New York law deprived him of due process of law. The crime of murder is defined by the statute, which represents a recent revision of the state criminal code, as causing the death of another person with intent to do so. The death, the intent to kill, and causation are the facts that the State is required to prove beyond a reasonable doubt if a person is to be convicted of murder. No further facts are either presumed or inferred in order to constitute the crime. The statute does provide an affirmative defense—that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation—which, if proved by a preponderance of the evidence, should reduce the crime to manslaughter, an offense defined in a separate section of the statute. It is plain enough that if the intentional killing is shown, the State intends to deal with the defendant as a murderer unless he demonstrates the mitigating circumstances."

\*     \*     \*     \*     \*     \*

"Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here."

*Patterson*, 432 U.S. at 205, 210, 97 S.Ct. at 2324–27, 53 L.Ed.2d at 289, 292.

In Indiana, murder and manslaughter are defined under the new penal code as follows:

"35–42–1–1. *Murder.* A person who:

(1) Knowingly or intentionally kills another human being; or

(2) Kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery; commits murder, a felony.

\*     \*     \*     \*     \*     \*

"35–42–1–3. *Voluntary manslaughter.*

(a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a class B felony.

(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter."

Indiana's statutory scheme for homicide differs in at least one key respect with those of Maine and New York. Our statute does *not* express an intention that the defendant carry the burden of showing sudden heat, while both New York's and Maine's expressly put this burden upon the defendant and further require him to carry that burden by a preponderance of the evidence.[1]

■ Section 3 (voluntary manslaughter) of our homicide chapter must be read in conjunction with section 1 (murder). "Sudden heat" is the only factor which distinguishes the two. While it may not be mandated by our federal constitution (*Patterson, supra*) it has long been a basic tenet of Indiana law that, although the defendant bears the burden of placing his affirmative defense in issue, the prosecution bears the ultimate burden of negating any defense which is sufficiently raised by the defendant. *See, e. g., Jackson v. State,* (1978) 267 Ind. 501, 371 N.E.2d 698 and *Dorak v. State,* (1915) 183 Ind. 622, 109 N.E. 771 (self-defense); *Casterlow v. State,* (1971) 256 Ind. 214, 267 N.E.2d 552 and *French v. State,* (1859) 12 Ind. 670 (alibi), *Sceifers v. State,* (1978) 267 Ind. 687, 373 N.E.2d 131 and *Bradley v. State,* (1870) 31 Ind. 492, 506 (insanity); *Henry v. State,* (1978) 269 Ind. 1, 379 N.E.2d 132 (entrapment); *Smith v. State,* 255 Ind. 687, 689, 266 N.E.2d 216 (intoxication). *See also,* 224 C.J.S. Criminal Laws § 573 (1961).

The issue of shifting burdens of proofs and presumptions was carefully examined by this Court in *Welty v. State,* (1912) 180 Ind. 411, 428, 100 N.E. 73, 80–81, wherein it was stated:

"An unexplained homicide with a deadly weapon upon a provocation by words only, can have no other interpretation than that of malice. It implies malice, because the unexplained killing of a human being is unlawful, and public policy requires that an implication of malice shall arise, hence, it is not a question of reducing the offense of (sic) manslaughter because the State has a right to stand on a *prima facie* case, and if it is rendered valueless by the evidence, the State still has the burden of proving malice, if it insists upon a conviction of murder."

We believe that the following statement found in the West Anno. Indiana Statutes at 237 of the unofficial commentary following Ind.Code § 35–42–1–3 accurately reflects the law on this subject:

"If there is some evidence of 'sudden heat' then the state must bear the burden of negating the existence of sudden heat beyond a reasonable doubt. The failure to negate 'sudden heat' would reduce what otherwise would be murder to voluntary manslaughter. The defendant strictly speaking, bears no burden with respect to 'sudden heat'; however, he bears the risk of not being entitled to an instruction on 'sudden heat' if there is no evidence in the case to put the issue of sudden heat in question. Thus, in one sense, he bears the 'burden' of placing the issue in question where the state's evidence has not done so."

Our holding is that the homicide chapter of the new penal code does not evidence a legislative intent to relocate the burden of proof of sudden heat. Ind.Code § 35–41–4–1 (Burns 1979) places the burden upon the prosecution to prove defendant's guilt beyond a reasonable doubt; only the de-

---

1. The original version of our new penal code contained a proviso that the state was not required to prove sudden heat, or as it was then labeled: "intense passion resulting from grave and sudden provocation." Acts 1976, P.L. 148, § 2, 9. 731. However, the proviso was deleted by a 1977 amendment before the effective date of the new penal code. Acts 1977, P.L. 340, § 27, p. 1533.

fense of insanity is specifically excepted.[2] We do note that our statute is similar to New York's second degree murder statute to the extent that malice is no longer specified as an element of murder. Thus the prosecution is no longer required to prove malice in order to make a prima facie case of murder against the accused.

Nor do we agree with the contention that, since sudden heat is an element of the crime of voluntary manslaughter, the prosecution must prove the existence of sudden heat to support a voluntary manslaughter conviction. *Palmer v. State*, (1981) Ind., 425 N.E.2d 640, and cases there cited. Sudden heat is an element, but not one of culpability. *Neff v. State*, (1978) Ind.App., 379 N.E.2d 473; *Holloway v. State*, (1976) Ind.App., 352 N.E.2d 523. As a "mitigating factor," sudden heat serves to negate the culpability for murder rather than to establish a degree of culpability. *Neff, supra; Holloway, supra.* See Ind.Code § 35–42–1–3(b).

In the case at bar, the prosecution was seeking a murder conviction and Defendant raised the defense that his actions were the result of sudden heat. Evidence tending to show sudden heat was adduced at trial. The trial court instructed the jury that the burden of proof was upon the State to prove the absence of sudden heat beyond a reasonable doubt. We perceive no error in this instruction. Nor are we persuaded by the arguments that the jury could have regarded the voluntary manslaughter statute as shifting onto the defendant the burden of showing that he acted in sudden heat, and that it would have been thereby confused by other instructions which stated the contrary.

### ISSUE II

Defendant contends that the trial court erred in admitting State's Exhibits Nos. 11 and 14 into evidence. Exhibit No. 11 is the original tape recording of Defendant's statement to the police, given shortly after his arrest. Exhibit No. 14 is a re-recording of Exhibit No. 11, with certain prejudicial parts deleted, by order of the trial court. Although the trial judge stated "State's Exhibit No. 11 is admitted into evidence," this was an error in terminology. Actually, the exhibit was only made a part of the record. The jury was never permitted to listen to Exhibit No. 11, hence it cannot be said that it was in evidence and certainly could not have prejudiced the defendant. Accordingly, our review will be limited to claims of error respecting the admission of Exhibit No. 14.

### A.

Defendant first contends that the Exhibit No. 14 was inaudible citing *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795. We have listened to it, as well as to Exhibit No. 11, Defendant's taped statement, and find that it was of sufficient clarity to be "intelligible and enlightening to the jury." *Id.* at 513, 282 N.E.2d at 800.

### B.

Defendant next contends that his statement contains certain irrelevant and prejudicial material which the trial court refused to delete. Specifically, he objected to several portions of the statement wherein he casually related that his wife had been in jail for a month on an armed robbery charge, that an acquaintance had accused him of theft, and that he had converted his .22 rifle (used to shoot the victim) into its sawed-off form. We are of the opinion, however, that these irrelevant and wholly voluntary comments, when considered in context with the entire statement, did not prejudice his substantial rights.

---

**2.** 35–41–4–1. Standard of proof—Defendant's burden to establish insanity.—(a) A person may be convicted of an offense only if his guilt is beyond a reasonable doubt.

  (b) Notwithstanding subsection (a), the burden of proof is on the defendant to establish the defense of insanity (IC 35–41–3–6) by a preponderance of the evidence. [IC 35–41–4–1, as added by Acts 1976, P.L. 148, § 1, p. 718; 1977, P.L. 340, § 16, p. 1533; 1978, P.L. 145, § 9, p. 1322.]

### C.

Defendant's third contention is that his statement was the product of an illegal, warrantless arrest. The evidence adduced at the suppression hearing reflected that, on November 7, 1977, Defendant was staying in his brother's residence in Hammond (Lake County), Indiana. The brother went to the Hammond police and so informed them. The police went to the brother's residence and, by prior arrangement with the brother, they were allowed inside so that they could arrest Defendant. They had in their possession an arrest warrant issued in Porter County.

It appears to be Defendant's contention that the police used his arrest as a pretext to search the premises of his brother and that such search was conducted without benefit of a search warrant. Defendant's argument is misplaced and contains numerous fallacies. There is no constitutional requirement for a search warrant in order to effect an arrest inside a private residence. Generally, only an arrest warrant is required. *Payton v. New York*, (1980) 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639.

The Hammond police possessed a warrant for Defendant's arrest. Furthermore, they had the owner's permission to enter and search the residence. Defendant did not have standing to object to the entry or the subsequent search. The record is devoid of evidence that the confession is the "fruit" of an illegal search or that Defendant's arrest was a mere pretext to search. No error is presented.

### D.

Defendant next contends that his statement was involuntary—the result of being handcuffed with his hands behind his back for the hour long drive between Hammond and Valparaiso and of his being under the influence of drugs at the time of his statement.

At the suppression hearing, three members of the Valparaiso Police Department testified that they read the *Miranda* advisements to Defendant and that he had read them himself. He did not sign a waiver, because he was handcuffed. They further testified that he acted normal, talked coherently, and did not appear to be under the influence of drugs. This testimony was contradicted in part by the testimony of Defendant, but on appeal from a trial court's ruling at a suppression hearing, we consider only that evidence, and logical inferences therefrom favorable to the ruling to determine whether it was supported by substantial probative evidence.

The record, when viewed in that light, reflects that Defendant made a knowing and intelligent waiver of his rights and that his statement was voluntary and not induced by violence, threats, promises or other improper influence. *Cf. Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188; *Raines v. State*, (1971) 256 Ind. 404, 269 N.E.2d 378. That Defendant was handcuffed with his hands behind his back when he was informed of his rights and when he gave his statement does not, standing alone, render that statement involuntary.

### ISSUE III

After Defendant was taken to the Hammond police station, the officers decided that they should return to the brother's residence and search for a gun. They obtained written consent from the brother's wife, and proceeded to search the premises. A letter inculpatory of the defendant was discovered and admitted into evidence over Defendant's objections.

### A.

Defendant argues that the search was unlawful because made without benefit of a warrant. However, the record reflects that Defendant did not have standing to object to the search. The residence belonged to, and was occupied by Defendant's brother and sister-in-law. The sister-in-law gave written consent to the Hammond police to search the premises. Defendant was hiding there as a fugitive from justice on the day in question. By his own admission, he was neither living nor sleeping there.

Thus, he had no reasonable expectation of privacy with respect to his brother's residence and had no standing to challenge the legality of the search. *Cf. Brames v. State*, (1980) Ind., 406 N.E.2d 252.

B.

▮ Defendant further contends that the letter was admitted into evidence without having been properly authenticated. The record reflects that Officer Lippens testified that it was his opinion that Defendant had written the letter. The officer reached that conclusion by comparing the handwriting on the letter with that on State's Exhibit 8, a form authorizing the release of Defendant's automobile. Exhibit 8 had been signed by the defendant in Officer Lippens' presence. Nevertheless, Defendant contends that Officer Lippens was not sufficiently "familiar" with Defendant's handwriting. We disagree. That the officer had nothing more than one signature by Defendant to compare with the handwriting on the letter went to the weight and credibility of the evidence, not its admissibility. *See Spencer v. State*, (1958) 237 Ind. 622, 147 N.E.2d 581. The trial judge has wide latitude in determining the admissibility of such evidence and that decision will be reversed only upon a clear showing of an abuse of discretion.

▮ Defendant further contends that his signature on Exhibit No. 8 was obtained in violation of the Fifth, Sixth, and Fourteenth Amendment, in that he was entitled to the assistance of counsel and that he was not advised that his signature would be used to incriminate him.

However, the United States Supreme Court held in *Gilbert v. California*, (1967) 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, that the taking of a handwriting exemplar is not a critical stage of the proceedings entitling the accused to counsel. Furthermore, this Court held in *Hollars v. State*, (1972) 259 Ind. 229, 286 N.E.2d 166, that the right against self-incrimination protects the accused only against *testimonial* compulsion and does not extend to compulsory submission to such physical tests as handwriting exemplars.

C.

▮ Defendant complains that the letter contains a reference to the fact that his wife was in jail for armed robbery. However, this incidental comment did not, in context, prejudice the substantial rights of Defendant. Additionally, competent evidence is not rendered inadmissible merely because it incidentally reveals irrelevant matter which, in a different context would be inadmissible.

ISSUE IV

▮ Defendant contends that the trial court erred in giving State's Instructions Nos. 6 and 7. He argues that Instruction No. 6 improperly incorporated the "reasonable person standard" into the doctrine of sudden heat. Instruction No. 6 read as follows:

"The Court instructs you for sudden heat to be a mitigating factor that reduces what would otherwise be murder to voluntary manslaughter, it is necessary for the Defendant's actions to be the result of provocation sufficient to produce a similar state of mind in a reasonable person."

Instructions upon sudden heat are usually expressed in terms of the "ordinary man" rather than the "reasonable man." *See e. g., Wollam v. State*, (1978) Ind., 380 N.E.2d 82; *Dickens v. State*, (1973) 260 Ind. 284, 295 N.E.2d 613. However, we fail to perceive how the defendant could have been prejudiced by the minimal difference between the two. Defendant has not cited cogent authority or made any convincing argument as to how he was harmed in this regard.

Defendant further complains that Instruction No. 7 erroneously stated that there must be a "reasonable opportunity for the passion to cool" rather than "ample time for passion to subside." We perceive no significant difference between the two.

ISSUE V

▮ Defendant assigns error to the court's having refused to give his tendered

final instruction No. 2, which was as follows:

"The law in the State of Indiana does not require that the sudden heat of passion as a requirement for voluntary manslaughter be exclusive between the accused and the victim. In other words, a third or fourth party may be in part or in whole the cause of the sudden heat or provocation."

He cites no authority in support of his position and it is not necessary for us to pass upon the correctness of such abstract proposition. State's Instruction No. 7 was a correct and adequate instruction upon the mitigating factors that will reduce to manslaughter that which otherwise would be murder. Part of such instruction was "There must have been a casual connection between the provocation, passion and the fatal act." We believe this to have been sufficient.

There was nothing about any of the instructions given which suggested that the "sudden heat" was required to have been generated by the victim. Hence there was no need for an instruction to dispel, modify or qualify the concept.

It is not error to refuse to give a tendered instruction which is adequately covered by others given by the court. *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352, *cert. denied*, 429 U.S. 851, 97 S.Ct. 141, 50 L.Ed.2d 125.

## ISSUE VI

Defendant assigns error to the giving of State's Instruction No. 13, which stated:

"Evidence of flight of a person immediately after the commission of a crime with which he is being charged is a circumstance which may be considered by you in connection with all other evidence to aid in determining the Defendant's guilt or innocence."

Defendant argues that evidence of flight alone is not reliable evidence of guilt. However, he apparently misreads the instruction because it merely states that evidence of flight is a circumstance which may be considered with all the evidence in determining the guilt or innocence of the accused.

The instruction did not command the jury to consider Defendant's flight or evidence of his guilt but merely informed them that it was a circumstance which it could consider.

We seriously question the wisdom of giving any instruction which directs the attention of the jury to any specific evidence, without reason other than to advise that it may be considered. There is no need for such instructions, and there is always the risk that the jury may speculate, therefrom, that the judge regards it as having particular significance. We believe that jurors know that they may consider all the evidence that the court has allowed to be presented. However, the instruction given has been approved in the past. *James v. State*, (1976) 265 Ind. 384, 354 N.E.2d 236.

## ISSUE VII

Defendant contends that the trial court erred in failing to take proper action in response to objections addressed to allegedly improper comments by the prosecutor in closing argument.

We find nothing objectionable in the comments complained of. Stating that certain evidence was undisputed is not a comment upon the defendant's failure to testify; and the rules precluding arguments that imply special knowledge of facts not in evidence do not preclude counsel from expression of his conclusions drawn from the evidence. *Worthington v. State*, (1980) Ind., 405 N.E.2d 913.

## ISSUE VIII

The court gave a number of instructions to the jury on the justifiable use of force in defense of one's self or others. One of such instructions was given sua sponte over the defendant's objection. The instruction was as follows:

"The law of Indiana recognizes that homicide done in (self defense) or (defense of a third person) is not a crime.

"A person is justified in using deadly force only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself (or a third person).

"In determining whether the defendant had a reasonable fear of (the imminent use of unlawful force) or (serious bodily injury) you should look at the situation in question from the defendant's point of view at that time.

"If all of the evidence in the case on the issue of self defense leaves you with a reasonable doubt concerning the defendant's guilt, you should find him not guilty."

The basis for the objection was that the instruction was incomplete and should have also incorporated the following statement:

"A person is justified in using reasonable force against another person to protect himself (or a third person) from what he reasonably believes to be the imminent use of unlawful force."

The substance of the omitted statement was covered in State's Instruction No. 3 and Defendant's Instructions Nos. 6 and 7. It is not error to refuse an instruction, the substance of which was covered by instructions given. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482.

### ISSUE IX

Defendant raises a number of issues with respect to his fifty year sentence.

▮ First, he contends that Ind.Code § 35–4.1–4–7 is unconstitutional in that it does not allow the trial judge to consider the circumstances of the crime, including the mental state of the accused, when sentencing a defendant. We disagree with defense counsel's interpretation of the statute. Ind.Code § 35–4.1–4–7(a) specifically requires the trial court, when sentencing a defendant, to consider, among other things, "the nature and circumstances of the crime." Additionally, the subsection "b" reference to mitigating factors calls for an examination of the reasons behind Defendant's actions, *e. g.*, whether or not the per-

son acted under strong provocation. Subsection "(d)" provides that the list of mitigating factors listed in subsection (b) is not exclusive and that the trial court may consider other factors which it deems pertinent. We find no merit to Defendant's contention.

▮ Defendant next contends that the trial court erred in sentencing him to an additional ten years over the basic forty year sentence, notwithstanding the finding of mitigating circumstances. It is Defendant's contention that when both aggravating and mitigating circumstances exist, they negate each other and the defendant should be sentenced for the basic term. Such a proposition is obviously contrary to the tenor of the statute which seeks to punish in proportion to the relevant circumstances.

▮ Defendant also charges that his sentence is excessive, in view of all of the circumstances.

The record reflects that he went into a tavern carrying a sawed-off rifle and spoiling for a fight. He repeatedly shot an unarmed victim at close range. His claims of self defense and sudden heat upon sufficient provocation were rejected by the jury. After the shooting he made no attempt to aid the victim but fled from the scene. At the time of the killing, the defendant was on parole, was dealing or attempting to deal unlawfully in controlled substances and had a history of criminality. Under these circumstances, it cannot be said that Defendant's sentence of fifty years, rather than the basic sentence of forty years, is manifestly unreasonable under Sentence Review Rule No. 2, notwithstanding that the victim provoked or encouraged the fight.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.